PASCACK VALLEY BANK AND TRUST COMPANY *v.* RITAR FORD, INC., ET AL.

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 1-671-12940

Argued March 9—decided December 24, 1970

*Lawrence J. Merly,* of Bridgeport, for the appellant (plaintiff).

*Sidney Vogel,* of Norwalk, for the appellee (defendant).

Kosicki, J.[1]  The corrected finding of the trial court, toward which no motions have been directed or exceptions thereon pursued, discloses the following factual situation.

---

[1] This appeal was initially argued on March 9, 1970, and on March 23, 1970, was remanded to the trial court for a finding as directed. A corrected finding was filed under date of April 10, 1970. Judge Kosicki retired on May 16, 1970. Counsel have stipulated in a writing dated November 3, 1970, that "no further documents or arguments" be required of them and that the appeal be decided on the record before us. This decision is, therefore, being rendered by the panel which heard the original argument on March 9, 1970, and is treated as an unfinished matter pursuant to General Statutes § 51-46.

On August 18, 1965, Robert Lipp purchased a 1964 Buick Wildcat convertible, serial No. 6K5051633, in New Jersey, from Frank Sapio, Inc. Lipp gave his address as 148 Pine Street, Brooklyn, New York. The automobile was financed by a conditional sale contract. The conditional sale contract was subsequently assigned to the plaintiff bank on August 18, 1965. The plaintiff, pursuant to the Uniform Commercial Code, filed in New Jersey a financing statement and obtained a certificate of ownership. On August 31, 1965, the plaintiff also filed a financing statement in Brooklyn, New York, at the county seat, with the clerk of Kings County, in which Robert Lipp resided, perfecting the lien of the conditional sale contract.

On December 15, 1965, Robert Lipp purchased a Ford automobile from the defendant Ritar Ford Sales, Inc., and traded in the Buick automobile. He received a trade-in allowance of $2200. On February 3, 1966, Ritar Ford sold the Buick automobile to the defendant Clara Osborne for $2100. She has defaulted in appearance, and no further consideration need be given to the issues concerning her part in this case. The plaintiff demanded payment of the unpaid balance of the contract from Ritar Ford.

John Pellegrino is the owner and president of Auto Recovery Bureau, Fairfield, Connecticut, which specializes in locating and reclaiming automobiles. He has been engaged in this business for about ten years and repossesses 400 to 500 units per year. Auto Recovery also acts as agent for out-of-state clients for selling repossessed automobiles to local car dealers. On or about March 11, 1966, Auto Recovery received a request from an investigator in New York, Frank Matrinez, to repossess a certain vehicle in the state of Connecticut. Further investigation found it in the possession of Clara Osborne in Norwalk, Connecticut.

Pellegrino finally contacted Lipp in Norwalk on or about June 16, 1966. His address at that time was 224 Strawberry Hill, East Norwalk, Connecticut. Pellegrino learned that Lipp was employed at the Factory Store in Norwalk and visited him at his place of employment. Lipp informed Pellegrino that his wife had the Buick automobile in Brooklyn, New York. Pellegrino contacted an agent in New York and found that Lipp's wife did not have the automobile. Pellegrino ran a check of the automobile by the manufacturer's serial identification number and found the vehicle registered in the state of Connecticut to Clara Osborne of Norwalk. A further check of the records indicated that the vehicle was sold to Clara Osborne by Ritar Ford. On June 7, 1966, Pellegrino received, from the plaintiff, another request to investigate the location of the same automobile. A plaintiff's exhibit is an application by Clara Osborne, Raymond Street, South Norwalk, Connecticut, for registration in Connecticut and a certificate of title.

The automobile sold by Ritar Ford to Clara Osborne was the same automobile that Pellegrino was requested to repossess. A plaintiff's exhibit is an application in the name of Robert Lipp, East Norwalk, Connecticut, for registration in Connecticut and a certificate of title for a 1966 Ford convertible, model 69, identification No. 6E69Y116459, dated December 15, 1965. The certificate of title was signed by Ritar Ford as owner. Lipp purchased this Ford automobile from Ritar Ford. Lipp traded in a 1964 Buick convertible, serial No. 6K5051633, for the purchase of the Ford. The Buick automobile was the same as that subsequently sold to Clara Osborne. The sale price of the 1966 Ford was $4000. William Bruno, Jr., signed the Lipp application on behalf of Ritar Ford. The plaintiff did not then know where Lipp was residing. The account of

the plaintiff with Lipp was a "skip" account. A "skip" account is one in default where the obligor cannot be located at his address or employment. Prior to the turning of this investigation over to Auto Recovery, Rimback Agency in New York was engaged to investigate. In June, 1966, Auto Recovery notified Matrinez that they had located Lipp in Connecticut. The report simply said, "We had located him in Connecticut." Matrinez was advised that it was thought that Lipp was living on Rowan Street in Norwalk and employed by HCA Factory Outlet in Norwalk.

A plaintiff's exhibit is a photocopy of the ledger card of Robert Lipp, 148 Pine Street, Brooklyn, New York. Lipp was at all times, from the very beginning, in arrears on his payments and kept falling further behind. The payments to the plaintiff were made pursuant to a conditional sale contract, with a bill of sale and a lien attached, filed in Trenton, New Jersey. The contract was assigned to the plaintiff by the original seller, Frank Sapio, Inc. A plaintiff's exhibit is the conditional sale contract which the plaintiff purchased from Frank Sapio, Inc. The contract is on the face, and the note is on the back, of the document. The contract contains a form of assignment about in the middle of the page. The note is signed on behalf of the endorser, Frank Sapio. Frank Sapio is the owner and the president of Frank Sapio, Inc., and endorsed the note and the assignment. The plaintiff paid the balance financed by the contract. The plaintiff caused an investigation to be made concerning the credit and employment of Robert Lipp. When the contract was assigned to the plaintiff, it accepted a retail instalment contract, a note, and a New Jersey title showing the bank's lien. A plaintiff's exhibit is the original New Jersey title showing the plaintiff as lienholder on the 1964 Buick convertible in

question; it was filed in the usual course of business. The certificate of title indicates the address of 148 Pine Street, Brooklyn, New York, for Robert Lipp.

Matrinez filed a financing statement on August 31, 1965, in Kings County, New York. The financing statement was filed in New York because the customer, Robert Lipp, was a New York resident. A plaintiff's exhibit is the financing statement which the plaintiff filed on Robert Lipp of 148 Pine Street, Brooklyn, New York, on a 1964 Buick Wildcat convertible, serial No. 6K5051633, on August 31, 1965. A letter written on behalf of the plaintiff to the New York City Register, Supreme Court Building in Brooklyn, New York, indicates an acknowledgment from the Kings County Register's Office of the financing statement. The letter was sent and received back in the usual course of the plaintiff's business. The acknowledgment by the Kings County Register indicates a file No. 65P51578. This same number is indicated on the financing statement. The financing statement was filed according to the Uniform Commercial Code of New Jersey. Matrinez had been in the car financing business for approximately twenty-five years. New Jersey is a title state. New York is not a title state. The financing statement was filed in New York, because it was another state where Lipp resided and it was a nontitle state. The financing statement was filed according to the Uniform Commercial Code. New York has a commercial code but not a title law.

William A. Bruno, Jr., of 14 Ruby Lane, South Norwalk, Connecticut, is a salesman who had been employed by Ritar Ford since August 3, 1964. On December 15, 1965, he was assistant sales manager of Ritar Ford, and still is. His duties include selling automobiles and handling registrations; he signs the applications before they go to the motor vehicle department. At the bottom of the Lipp application for

a certificate of title for the Ford convertible is a certificate of origin which comes with every new car. It shows that the automobile was not previously owned and is a manufacturer's certificate. It is signed by Bruno as assistant sales manager. A notary public by the name of Barbara Ranzelli, employed by the motor vehicle department, took Bruno's acknowledgment. The application for registration, as well as the certificate of title, is also signed by Bruno on behalf of Ritar Ford. The application for registration shows Robert Lipp as owner of the Buick car. Approximately forty-five days elapsed between the purchase of Lipp's automobile by Ritar Ford and the sale to Clara Osborne. Richard Khachian, of Fairfield, Connecticut, is vice president and a stockholder of Ritar Ford. On October 21, 1966, Khachian received a letter from the attorney for the plaintiff making demand on Ritar Ford for the unpaid balance of the contract with Lipp, together with attorney's fees. On March 6, 1967, a motion was made on behalf of Ritar Ford to have Robert Lipp joined as a party defendant. On March 28, 1967, the necessary papers were served on the defendant Robert Lipp. Ritar Ford has never settled with Robert Lipp.

Alexander Sweet is a salesman at Ritar Ford in Norwalk and handled the transaction between Ritar Ford and Robert Lipp. A defendant's exhibit is a New York registration and has the signature of the owner, Robert Lipp, on the back. The registration is for the Buick automobile in question. At the time of the transaction, Sweet inquired of Lipp whether there were any unpaid liens on the automobile. Lipp told him there was a loan against the car with the Fairfield County Trust Company. Ritar Ford paid the loan. The approximate amount of the loan was $375 or $380. Lipp gave Sweet no bill

of sale or other indicia of ownership of the Buick other than the registration. Sweet testified that he does not know how to determine ownership. He also does not know of any way to determine whether there is an outstanding lien on a New York motor vehicle. Sweet's entire investigation of whether or not there was a lien on the subject motor vehicle was confined to his inquiry of Lipp.

Before a transaction becomes final, the owner or sales manager should affix his signature to the contract. The vice president of Ritar Ford is Khachian, and the sales manager is Tarpinian. Sweet did not refer the matter to either of these men, even though he received no bill of sale or evidence of title from Lipp. Sweet does not know if there was a filing in Connecticut on the outstanding lien with the Fairfield County Trust Company. He did not investigate to see if there was a lien filed with the secretary of state's office. He did not refer the matter to Tarpinian or Khachian to determine whether or not there had been such a filing.

Walter S. Loiewski is the assistant treasurer of the Fairfield County Trust Company, a bank maintaining an office in Norwalk, Connecticut, but he did not personally handle the transaction of Robert Lipp in December of 1965. This was handled by Robert Finn. Finn was engaged in the business of loans and automobile ownerships. The bank requested from Lipp a copy of the original paid-in-full bill of sale on the Buick. It intended to keep one copy of the bill of sale and to mail one copy to Ritar Ford. Lipp never delivered the requested bill of sale. In December, 1965, Lipp owed the bank $323.28. This obligation was paid by Ritar Ford. The bank did not file a form U.C.I. to comply with the Uniform Commercial Code. No investigation was made by the bank to learn whether there was an outstanding

lien on the subject motor vehicle. A check could have been made with the town clerk, the county clerk, or the city registrar's office in the city where the borrower was residing. In the county seat where a borrower has the car registered, records of liens are kept and are available. The subject automobile was registered to Lipp at 148 Pine Street, Brooklyn, New York. It is time consuming, but not difficult, to check whether there is an outstanding lien. It takes about a week because of transit of mails.

The Fairfield bank's records do not indicate whether Lipp had any interest in the Buick automobile. To prove ownership of an automobile coming in from out of state, from a nontitle state, one must check the records where liens are there recorded, usually the office of town clerk or county register. If the state is a title state, one must obtain evidence of title. The title indicates whether or not there are outstanding liens. This is the regular and usual practice. This procedure was not employed by Ritar Ford. Sweet had occasion to sell Lipp an automobile. He took a Buick in trade from Lipp. Lipp gave, as his address, Rowan Street, Norwalk, Connecticut. Sweet inquired of Lipp as to liens and outstanding obligations against the automobile taken in trade. He was told by Lipp only of the loan with the Fairfield County Trust Company. Lipp indicated that he was the manager of the toy department in the Factory Store in Norwalk. When Lipp brought in the Buick car to trade it in, he simply produced, as proof of ownership, a New York registration which showed his address to be a New York address. He stated that he was living at Rowan Street in East Norwalk. Sweet did not check with the motor vehicle department to learn whether there were any liens on the car. He did not inquire if there were any liens on the car other than by calling the Fairfield County Trust Company.

Ritar Ford is a franchise dealer for Ford. Khachian is familiar with the various transactions of the company and keeps an eye on the business of the company as it progresses. He was aware that a Buick car had, at the end of 1965, been taken in trade by Ritar Ford. Clara Osborne was a customer in the usual course of trade and in no way connected with Ritar Ford. The parties, at the time of trial, and in fact after the sale to Clara Osborne, did not know where the automobile was.

Upon the foregoing facts, the trial court concluded that the value of the Buick automobile, at the time of conversion, was $2100. It also reached the following conclusions with which we do not agree: demand and refusal are essential in this case; no demand was made; the Buick automobile came into the possession of Ritar Ford rightfully; any lien which might have existed in Connecticut had expired.

The court has evidently ignored two essential propositions of law which are evident from the finding and from an examination of our Connecticut law. These are, first, that Connecticut is a title state and that one who endeavors to obtain an automobile registration in this state must first prove by a certificate of title that he is the rightful owner of the car sought to be registered. General Statutes §§ 14-165—14-211. The second proposition, which applies to all motor vehicle transactions, is that a fraudulent assertion of title does not confer title if the presumptive owner, as was Ritar Ford in this case, did not use the care and due diligence required of a reasonable man under similar circumstances.

No briefs were filed by the parties after the issuance of the corrected finding by the trial court. The plaintiff had submitted a brief directed to an earlier

finding which, on the first presentation of this appeal, had been found inadequate. Ritar Ford at no time briefed the issues to be decided by us. Because of the lengthy and avoidable delays occurring hitherto, we shall, at the instance of the parties, decide the issues on such record as we have before us.

Judgment was entered for Ritar Ford on July 30, 1968. In its memorandum of decision, the court stated that an essential element of the plaintiff's claim was proof and finding of the element of demand on and refusal by Ritar Ford for the return of the Buick automobile to the plaintiff as assignee of the conditional sale contract thereon. This contract was recorded, as the finding shows, both in New Jersey and in New York, where Lipp had lived before coming to Connecticut. The case cited by the court in support of its legal conclusion, *Atlas Assurance Co.* v. *Gibbs,* 121 Conn. 188, is inapplicable. That was an action for replevin of an automobile consisting of a body taken from a car stolen from the plaintiff's assured and an engine which was part of another car and rightfully in the defendant's possession. Our Supreme Court held that, while the stolen body might be subject to replevin, the severable engine was not.

The trial court also relied, in its memorandum, on General Statutes § 42a-9-103, entitled "Accounts, contract rights, general intangibles and equipment relating to another jurisdiction; and incoming goods already subject to a security interest." The section is part of article 9 of the Uniform Commercial Code, title 42a. The particular provision of the section quoted by the court is as follows: "If the security interest was already perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, the security interest continues perfected

in this state for four months and also thereafter if within the four-month period it is perfected in this state." § 42a-9-103 (3).

The conclusions of the court which are the subject of attack on this appeal apparently ignore the undisputed fact that, because Lipp had "skipped" from New Jersey and New York, leaving an unpaid balance due the plaintiff of $2981.88, and had deliberately misled the investigators engaged by the plaintiff both as to Ritar Ford and the location of the Buick, the security interest claimed by the plaintiff was foreclosed by the tort of Lipp and the failure of Ritar Ford to use reasonable diligence in verifying the title to the car. It is admitted that as soon as Ritar Ford was apprised of the true facts by the plaintiff, it made demand on Lipp and brought action against him. It is a fair inference from the facts found that Lipp has absconded and that the action against him by Ritar Ford has so far proved unavailing. It is also a part of this record, by a defendant's exhibit, that on May 2, 1967, at Norwalk, Lipp had pleaded nolo contendere to a charge of violating General Statutes § 53-129b by concealment or conveyance of, or concealment of the lien on, the Buick automobile here in question, and was convicted and sentenced. The execution of the sentence was suspended and Lipp was placed on probation, as a condition of which he was required to make restitution. There is nothing to indicate that this condition has been fulfilled either in whole or in part.

The present action sounds in conversion. "An unauthorized assumption and exercise of right of ownership over property belonging to another, to the exclusion of the owner's rights, is a conversion. 'The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of

dominion and to his harm.' *Gilbert* v. *Walker,* 64 Conn. 390, 394 . . . ; *Coleman* v. *Francis,* 102 Conn. 612, 615 . . . . By the assignment the title to the car passed to the plaintiff, and when possession came again into the hands of the . . . [assignor] the latter could only hold it on behalf of the plaintiff; the attempted resale to . . . [the buyer] and the assignment of the second conditional bill of sale to the defendant conveyed no title to the car. . . . The conditional sale contract, so far as concerns the rights of the plaintiff, was not extinguished by the subsequent transaction and the plaintiff continued legally entitled to its benefit. . . . The assumption by the defendant of the plaintiff's prior and superior right to take possession of and sell the car amounted to a conversion, as to the plaintiff." *New Britain Real Estate & Title Co.* v. *Hartford Acceptance Corporation,* 112 Conn. 613, 616, 617; see *VanDerlip* v. *VanDerlip,* 149 Conn. 285, 289.

It is clear from the authorities that demand and refusal are necessary only where no conversion has yet taken place and evidence of conversion is required. In the present case, the act of Ritar Ford in purchasing the Buick while it was subject to a valid lien was a conversion. The possession by Ritar Ford, under the circumstances related in the finding, was wrongful in the first instance, and demand and refusal were unnecessary.

In any event, the plaintiff did make a reasonable demand on Ritar Ford for the unpaid balance of the contract price. The demand was made after the plaintiff first learned where the peripatetic Buick could be found. This was after its sale to Clara Osborne. Thus, a demand on Ritar Ford for return of the car would have been futile.

The conclusion of the court that the four months' "limitation" under § 42a-9-103 (3) rendered the

plaintiff's lien invalid is untenable. The precise question is whether the filing of the necessary financing and title statements in New Jersey and New York had been perfected on December 15, 1965, when the Buick was purchased by Ritar Ford.

General Statutes § 14-185 (d) provides: "If a vehicle is subject to a security interest when brought into this state, subsections (2), (3) and (4) of section 42a-9-103 state the rules which apply to determine the validity and perfection of the security interest in this state." As noted above, subsection (3) provides that such a perfected security interest continues perfected in this state for four months and also thereafter if within the four-month period it is perfected in this state. It is not known when the automobile was brought into Connecticut, but obviously it was after August 18, 1965, when Lipp had purchased it. Ritar Ford bought the Buick from Lipp on December 15, 1965, within four months of the date it was brought into this state. Therefore the automobile, when purchased by Ritar Ford, was subject to a valid and outstanding lien, and Ritar Ford became liable for its conversion.

The foregoing review of the facts and the law makes unnecessary a further consideration of the additional claims of error asserted by the plaintiff. The judgment appealed from is erroneous and is therefore set aside with direction that judgment enter for the plaintiff in the amount of damages stated in the finding.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff to recover of the named defendant the amount of $2100, together with interest at 6 percent per annum from the date of the original judgment, July 30, 1968.

In this opinion CASALE and JACOBS, Js., concurred.