532 P.2d 553

**ARROW FORD, INC., a Foreign Corporation, Appellant,**

v.

**WESTERN LANDSCAPE CONSTRUCTION CO., INC., an Arizona Corporation, Gary L. Triano and Mary Triano, husband and wife, dba Frontier Used Cars, and Robert Cooke and Helen Cooke, husband and wife, dba C & C Auto Sales, Appellees.**

**No. 2 CA–CIV 1570.**

Court of Appeals of Arizona, Division 2.

March 11, 1975.

**282**

Bob O. Barber, Jr., Tucson, for appellant.

David L. Pakula, Tucson, for appellees Cooke.

Russo, Cox, Dickerson & Cartin, P. C., by Thomas G. Cox, Tucson, for appellees Triano.

Slutes, Zlaket, Sakrison & Wasley, by D. Thompson Slutes, Tucson, for appellee Western Landscape Const. Co.

OPINION

HATHAWAY, Judge.

Plaintiff Arrow Ford, Inc., a Texas corporation (hereinafter referred to as Arrow) appeals from a judgment in favor of defendants Western Landscape Construction Co., Inc., an Arizona corporation (hereinafter referred to as Western); Gary L. Triano and Mary Triano, husband and wife, doing business as Frontier Auto Sales (hereinafter referred to as Frontier); and Robert Cooke and Helen Cooke, husband and wife, doing business as C&C Auto Sales (hereinafter referred to as C&C).

The stipulated facts are as follow: Arrow sold a 1972 Ford Thunderbird automobile in Texas to Ray Wood on September 21, 1971. The automobile was financed by the Ford Motor Credit Union Company, which became the holder of a security interest in the automobile on September 24, 1971. This security interest was perfected under Texas law upon the issuance of a Texas certificate of title on October 6, 1971, showing Wood as the owner and Ford Motor Credit Union Company as leinholder.

Wood defaulted on his payments and Ford Motor Credit Union Company assigned its perfected security interest to Arrow in exchange for the amount of the unpaid debt. Meanwhile, Wood had left Texas and obtained an Oklahoma certificate of title which indicated no security interest outstanding on the automobile.

Wood then brought the automobile to Tucson and sold it to C&C which obtained an Arizona certificate of title on October 11, 1971, showing no outstanding security interest. On November 21, 1971, C&C sold it to Frontier and Frontier sold it to Western, which also obtained an Arizona certificate of title showing no liens or encumbrances.

Arrow thereafter filed this action on March 13, 1972, seeking from defendants either the return of the automobile or

judgment in the amount of its security interest of $5,725.18.

Resolution of this unfortunate situation requires application of Article 9 of the Uniform Commercial Code (hereinafter referred to as UCC) enacted in 1967, and contained in A.R.S. § 44–3101 et seq.[1] The widespread adoption of the UCC was an effort to achieve uniformity among the states in their treatment of commercial transactions and thereby easily resolve multistate transactions such as we have here. The issues before us are particularly difficult in that all parties to this lawsuit acted in good faith regarding the automobile in question. However, one party stands to lose the entire value of the automobile because of the fraudulent conduct of Wood who had, as of the date of this lawsuit, not been located.

It is undisputed that Arrow under Texas law held a valid and perfected security interest in the automobile as of October 6, 1971. Arrow cites A.R.S. § 44–3103(C) and (D) in support of its contention that its security interest is to be treated as valid and perfected in Arizona. Subsection (C) provides:

". . . If the security interest was already perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, the security interest continues perfected in this state for four months and also thereafter if within the four-month period it is perfected in this state."

Subsection (D) provides:

"Notwithstanding subsections B and C, if personal property is covered by a certificate of title issued under a statute of this state or any other jurisdiction which requires indication on a certificate of title of any security interest in the property as a condition of perfection, then the perfection is governed by the law of the jurisdiction which issued the certificate."

See General Motors Acceptance Corporation v. Whisnant, 387 F.2d 774 (5th Cir. 1968).

From the stipulations of the parties and the exhibits, it is evident that the automobile was brought into Arizona sometime prior to October 11, 1971, when Wood sold the automobile to C&C and C&C obtained an Arizona certificate of title showing no lein. It is undisputed that the security interest was perfected during this time in the State of Texas. Consequently, the defendants purchased the automobile during the four-month period during which the plaintiff's security interest was in existence. The pivotal question then becomes whether Arrow was required to affirmatively assert its perfected security interest, that is, seek reperfection in Arizona during the four-month period, or whether all purchases made during that four-month period were subject to Arrow's Texas lien, even though Arrow did not reperfect its security interest in Arizona. There are cases which have adopted the latter view. Pascack Valley Bank and Trust Company v. Ritar Ford, Inc., 6 Conn.Cir. 489, 276 A.2d 800 (1970); Churchill Motors, Inc. v. A. C. Lohman, Inc., 16 A.D.2d 560, 229 N.Y.S.2d 570 (1962); First National Bank of Bay Shore v. Stamper, 93 N.J.Super. 150, 225 A.2d 162 (1966).

Plaintiff maintains that since the defendants' purchases were all within the four-month period, they bought the automobile subject to its security interest. Decisions supporting this position have been expressly repudiated by the Permanent Editorial Board for the Uniform Commercial Code, Preliminary Draft No. 2, of Proposed Changes in Article Nine, p. 41 (Feb. 1970).

---

1. A.R.S. § 44–3102 encompassing the instant situation, reads:
"A. Except as otherwise provided . . ., this article applies so far as concerns any personal property and fixtures within the jurisdiction of this state:

1. To any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, . . . ."

Bender's Uniform Commercial Code Service Reporter-Digest, in its discussion of Churchill Motors, Inc., supra, states:

". . . While there is nothing in the statute to militate against the court's decision that title acquired by such a buyer during the four-month period continues subordinate thereafter, so also is there nothing to militate against the opposite conclusion. That is, there is nothing in either the 1952 or the 1958 version preventing the court from taking the position that a buyer such as the defendants acquires good title at the end of the four-month period if the secured party fails to reperfect within that time. While such an interpretation is no doubt inconsistent with the traditional approach that the rights of the parties are determined as of the date of sale, it certainly is no more mystical than the doctrine of relation back. In fact, it is a variant of it. Subsection (3) seeks only to strike a balance between the needs and wants of out-of-state secured parties and the needs and wants of in-state buyers and creditors. Since it is open to a construction which can further this policy by lending finality to the question of title at the end of four months, it should be construed restrictively."

Both the Churchill Motors and Stamper cases, supra, held that the four-month period is a period of absolute perfection and thus failure to perfect in the second state in the four-month period had no bearing on the status of the security interest during that period. Both courts believed that the phrase "continues perfected" could only be interpreted to mean absolute perfection, hence priority.

■■■ However, as writers have pointed out, the comment to § 9–103(3) explains that a second conflicting security interest in the collateral which is taken and perfected in the second state within the four-month period takes priority over the out-of-state security interest which is not reperfected within that period.[2] It has been maintained that, although no specific answer is given as to the status of other persons who acquire an interest in the collateral within the four-month period, the fact that a second secured creditor prevails over the security interest created in another state, is an indication that the four-month period is less than a period of absolute perfection. Therefore, we see no problem in holding that the four-month period is a period of grace which is forfeited if the secured creditor does not reperfect his interest within the four-month period. See Vernon, Recorded Chattel Security Interests in the Conflict of Laws, 47 Iowa L.Rev. 346 (1962). Professor Vernon maintains:

"Section 9–103 appears to leave open the question whether the holder of a perfected out-of-state security interest receives an absolute priority against interests acquired during the first four-month period, or whether the failure to file locally causes his priority to be displaced. The official comment suggests that the out-of-state interest is less than absolute, at least as against persons acquiring a perfected security interest during the four months. The failure of the out-of-state lender to file locally is said to elevate a previously inferior perfected, secured interest to a position of priority. No specific answer is given for interests acquired during the four months other than perfected security interests. However, it would seem that the failure to file, in essence, relates back, and the out-of-state interest is deemed unperfected from the time the property is re-

---

2. U.C.C. § 9–103, comment 7, explains: ". . . The four month period is long enough for a secured party to discover in most cases that the collateral has been removed and to file in this state; thereafter, if he has not done so, his interest . . . is subject to defeat here by those persons who take priority over an unperfected security interest. Under Section 9–312(5) the holder of a perfected conflicting security interest is such a person even though during the four month period the conflicting interest was junior." U.C.C. § 9–103 is A.R.S. § 44–3103.

moved to the Code state." 47 Iowa L. Rev. 377–8.

Other commentators on the U.C.C. agree:

"Thus, the creditor has four months from the time the goods crossed the state line to file a financing statement in the proper place at their new location. If he does so, his interest is continuously perfected, and he will maintain his relative priority. If he fails to perfect within the four-month period, he will become unperfected at the end of that time, and a later perfection will not relate back. The quoted provision of 9–103(3) presents but does not answer one puzzling lawyer question: If the creditor fails to perfect within the four-month period and some competing subordinate interest arises within that period, what is the relative priority of the interest after the four months? . . . . Comment 7 to 9–103 supports the conclusion that the rights are normally frozen when they arise within the four-month period and that at the expiration of the four-month period, the secured creditor who has failed to file in the second state will find himself subordinated to any who would have priority over an unprotected security interest. Thus, under our analysis, a buyer (who did not qualify under 9–307 and who, therefore, would be subordinate to a protected security interest) would hold a junior interest within the four-month period but that interest would mature into one superior to the secured creditor's interest if the secured creditor failed to perfect within the four-month period." J. White and R. Summers, Uniform Commercial Code. Pp. 848–49 (1972).

We adopt the position of the court in U. S. v. Squires, 378 F.Supp. 798 (S.D.Iowa 1974):

"As noted in Comment 7, the holder of a conflicting security interest during the four-month period will take precedence over the party with the senior security interest if that party does not file within the four-month period. The Court can-

not reconcile how a buyer without notice of the security interest can be in a lesser position than the holder of a perfected conflicting security interest arising within the four-month period. At the end of this four-month period, if the person with the senior security interest does not file in the new state to perfect that security interest, the buyer without notice of the security interest should take precedence over that security interest consistent with Comment 7 noted above.

There is no case law in Iowa interpreting this particular provision of the Uniform Commercial Code. The only guide this Court has is the Uniform Commercial Code itself, the official comments to the Uniform Commercial Code, certain writings of some commentators, and a small number of cases which appear to reach a result contrary to that result suggested by Comment 7 to the Uniform Commercial Code. Even though the authority is conflicting, the Court feels that the official Comment 7 to the Uniform Commercial Code is persuasive authority in support of the defendant's position. The suggested 1972 amendments to the Uniform Commercial Code, Section 9–103, also support the interpretation given that section by the defendant. The proposed Section 9–103(1)(d)(i) states that if 'action is not taken before the . . . end of four months after the collateral is brought into this state . . . , the security interest becomes unperfected at the end of that period and is thereafter deemed to have been unperfected as against the person who became a purchaser after removal.'

The plaintiff cites numerous authorities to the contrary. Churchill Motors, Inc., v. A. C. Lohman, Inc., 16 A.D.2d 560, 229 N.Y.S.2d 570, 1962; The First National Bank of Bay Shore v. Stamper, 93 N.J.Super. 150, 225 A.2d 162 (1966); Al Maroone Ford, Inc., v. Manheim Auto Auction, Inc., 205 Pa.Super. 154, 208 A. 2d 290 (1965); Utah Farm Production Credit Association v. Dinner, 302 F. Supp. 897 (D.Colo.1969). These cases

were also annotated in 30 A.L.R.3d 9, Section 37. The Court has reviewed these cases and finds that they do not give adequate consideration to official Comment 7 to the Uniform Commercial Code and its implications for interpreting the four-month rule. [Footnote omitted]

There is no material dispute as to the basic facts as it pertains to applying this section of the U.C.C. The plaintiff had a valid perfected security interest on the secured property in the State of South Dakota. When this collateral was moved to Iowa, it was sold within the four-month period in which the perfected security interest from South Dakota would be valid in Iowa. At no time during or after this four-month period did the plaintiff properly perfect that security interest in Iowa. This Court holds that a party who asserts a security interest perfected in another state but who does not file and perfect his interest in Iowa within a four-month period after the goods are transported to this state has a junior interest to the buyer for value who has no knowledge or notice of the security interest *after* the lapse of four months without perfection of the security interest in Iowa." 378 F.Supp. at 804.

The U.C.C.'s establishment of a four-month period of protection was an attempt to insure a definite cut-off period for the determination of rights and priorities of liens. Our holding effectively attains that goal. At the expiration of the four-month period, either the secured party has reperfected and has priority over subsequent interest holders or fails to reperfect and loses his priority. If we were to hold otherwise, years after the four-month period the original secured party would be able to maintain his lien against innocent purchasers ad infinitum if the collateral had been sold during the four-month period. Such a holding does nothing to effectively establish rights at the earliest possible time. We have used the U.C.C. and the Official Comments to further the policy the Code has outlined.

 Arrow did not reperfect its security interest within the four-month period. Therefore, we hold that those interests in the collateral which were acquired during that four-month period were not subject to Arrow's security interest.

Affirmed.

HOWARD, C. J. and KRUCKER, J., concur.