**In re KEN GARDNER FORD SALES, INC., Debtor.**

**Eddie W. WILLIAMS and Betty Williams, Plaintiffs,**

**v.**

**Kyle R. WEEMS, Trustee and American National Bank & Trust Company of Chattanooga, Defendants.**

**Bankruptcy No. 1–80–00588.**
**Adv. No. 1–81–0650.**

United States Bankruptcy Court,
E.D. Tennessee.

May 25, 1984.

H. Stan Guthrie, Morgan & Garner, Chattanooga, Tenn., for plaintiffs.

Richard C. Kennedy, Weill, Ellis, Weems & Copeland, Chattanooga, Tenn., for defendant, Kyle R. Weems, Trustee.

Lawrence R. Ahern, III and A. Alexander Taylor, II, Miller & Martin, Chattanooga, Tenn., for defendant, American Nat. Bank & Trust Co.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

The plaintiffs sued American National Bank and the bankruptcy trustee for Ken Gardner Ford Sales to recover damages for conversion. The plaintiffs alleged that they had a security interest in car parts and used cars owned by a Ford dealership in South Carolina, that the parts and used cars were transferred to the debtor, Ken Gardner Ford Sales, that the plaintiffs' security interest continued and was perfected at the time of the debtor's bankruptcy, and that the trustee abandoned the collateral to another secured creditor, American National Bank, which sold the collateral.

The testimony of Linda Gilbert indicated that all the used cars transferred to the debtor were sold before the debtor's bankruptcy. There was no contradictory evidence. There was no proof that the

trustee or the bank came into possession of proceeds from sales of the used cars. The court finds no conversion by the bank or the trustee of the plaintiffs' interest in the used cars. The balance of the court's opinion will concern only the parts transferred to the debtor.

The question before the court is whether the plaintiffs had a valid, first priority security interest in the parts. The plaintiffs introduced security agreements as proof that they had a security interest in the inventory, including car parts, belonging to the South Carolina dealership. The security interest was perfected by the filing of a financing statement in South Carolina on May 14, 1979.

The car parts in question were transferred to the debtor in Tennessee during February and March, 1980. The debtor filed its petition in bankruptcy on March 28, 1980.

American National Bank had a security interest in the debtor's inventory, including car parts. The security interest was perfected in the parts in question when the debtor acquired them.

The plaintiffs contend that their security interest in the parts was perfected in Tennessee at the time of the debtor's bankruptcy and was superior to the rights of the trustee and the bank. The plaintiffs rely on Uniform Commercial Code (UCC) § 9–103(3), as enacted in Tennessee. Tenn. Code Ann. § 47–9–103. The relevant part provides:

> If the security interest was already perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, the security interest continues perfected in this state for four (4) months and also thereafter if within the four-month period it is perfected in this state. The security interest may also be perfected after expiration of the four-month period; in such case perfection dates from the time of perfection in this state.

For collateral such as car parts, Tennessee law requires filing of a financing statement to perfect security interest in Tennessee. The problem is determining whether the "automatic" perfection during the four months after arrival of the collateral is conditional on perfecting in Tennessee during the four months.

The early decisions heavily favored *absolute* perfection during the four months. Under the absolute perfection rule, the security interest is treated as perfected forever as to any interest acquired in the four months. The later decisions have split, with some favoring *conditional* perfection. Under the conditional perfection rule, the security interest becomes unperfected during the four months if not re-perfected during that time in the state to which the collateral was moved. J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code § 23–18 at 975 (2d ed. 1980).

Consider application of the different rules to the facts of this case. Under the absolute perfection rule, it would make no difference that the plaintiffs did not perfect their security interest in Tennessee by filing a financing statement during the four months after the collateral came into Tennessee. The plaintiffs' security interest would be automatically perfected for four months and would have priority over the defendants' interests, since they were acquired during the four months. Under the conditional perfection rule, the plaintiffs' security interest would be treated as unperfected in Tennessee during the four-month grace period because the plaintiffs failed to file a financing statement during the four months.

The language of the statute appears to establish the absolute perfection rule, but Official Comment 7 explains the statute as providing for conditional perfection during the four months.

> The four month period is long enough for a secured party to discover in most cases that the collateral has been removed and to file in this state; thereafter, if he has not done so, his interest, although originally perfected in the state where it at-

tached, is subject to defeat by those persons who take priority over an unperfected security interest .... Under § 9–312(5) the holder of a perfected security interest is such a person even though during the four month period the conflicting interest was junior. Compare the situation arising under § 9–403(2) when a filing lapses.

Not surprisingly, § 9–403(2) also appears to adopt an absolute perfection rule but Official Comment 3 says that it provides only for conditional perfection.

■ Despite the apparent inconsistency, the court is of the opinion that a careful analysis of § 9–103(3) supports the rule that automatic perfection is conditional on perfection in Tennessee during the four month grace period.

The statute provides that if the security interest is not perfected in Tennessee until after the four months then perfection in Tennessee dates from the time of perfection. This obviously means that the security interest was not previously perfected in Tennessee, even during the "automatic" perfection period of four months. For example, if a financing statement is filed after the four months, then perfection dates from the time of filing and not earlier. This leads to the conclusion that automatic perfection during the four months is dependent on perfection in Tennessee by filing during the four months.

The other alternative is the nonsensical conclusion that a secured creditor who perfects in Tennessee after the four months will lose perfection against an interest arising during the four months but a secured creditor who never perfects in Tennessee will prevail.

The effect of perfection after the four months has also been explained in terms of whether perfection relates back to an earlier time. The problem is with rights acquired in the gap after the collateral arrives in Tennessee and before the security interest is perfected by performing any additional acts, such as filing, required for perfection in Tennessee. It has been said that perfection after the four months does not relate back to arrival of the goods and therefore does not protect the security interest from other interests arising in the gap. This again leads to the conclusion that filing during the four months is required so that perfection will relate back to the arrival of the collateral in Tennessee.

Moreover, the wording of the statute makes more sense if it provides for conditional perfection during the four months. When filing in Tennessee is required for perfection, the problem is with rights acquired in the gap between arrival of the collateral and filing. There is no problem with rights acquired after filing. Nevertheless the absolute perfection rule treats perfection during the four months as a condition only to perfection thereafter. G. Gilmore, Security Interests in Personal Property § 22.8 at 626–627 (1965). The statute is read as follows:

The security interest continues perfected in this state for four (4) months without filing and continues perfected after filing during the four months.

Of course the security interest continues perfected after perfection by filing during the four months. This is so obvious that the statute need not have said it. The statute makes more sense if read as follows:

[T]he security interest continues perfected in this state for four (4) months ... if within the four-month period it is perfected in this state.

Thus, perfection within the four months is not only a condition to the obvious—perfection after perfection—but also a condition to perfection in the gap after removal of the goods and before perfection.

The well-known commentators on the UCC have disagreed on the issue of whether § 9–103(3) establishes conditional or absolute perfection for the four months after removal of the collateral to another state. G. Gilmore, Security Interests in Personal Property § 22.8 at 626–627; J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code § 23–18 at 848–850 (1st ed. 1972). The court agrees with

Professors White and Summers, who favored the conditional perfection rule.

The 1972 version of the UCC has not been adopted in Tennessee, but the changes in § 9–103 indicate what the drafters intended in the version of § 9–103(3) in question. The 1972 version of § 9–103 adopts a conditional perfection rule as to "purchasers" during the four month period. UCC § 1–201(32) & (33). In a situation like this, the bank as a purchaser could prevail but not the trustee as a judgment lien creditor. J. White and R. Summers, Handbook of the Law under the Uniform Commercial Code § 23–18 at 974–976 (2d ed. 1980).

In one case involving collateral moved from Mississippi to Tennessee, the court of appeals for this circuit adopted the absolute perfection rule. *United States v. Burnette-Carter Company,* 575 F.2d 587, 23 UCC Rep.Serv. 1320 (6th Cir.1978), cert. den. 439 U.S. 996, 99 S.Ct. 596, 58 L.Ed.2d 669 (1978). The court, however, did not hold that Tennessee law under § 9–103(3) is the absolute perfection rule. The court was establishing a federal common law rule for cases involving the Farmers Home Administration. 575 F.2d 589–590, 23 UCC Rep.Serv. 1323–1325.

More troubling is a decision by the Tennessee Court of Appeals. *First Bristol County National Bank v. Shirley,* 11 UCC Rep.Serv. 378 (Tenn.App.1972). The court treated the case as one in which the collateral, a car, was moved from Rhode Island to Tennessee without the secured party's consent. The court then ruled in the secured party's favor, apparently on the ground that the collateral had been brought to Tennessee without the secured party's consent.

Despite the court's reasoning that consent controlled, the court discussed the operation of § 9–103(3). The court said:

> In at least two other states (New Jersey and Connecticut) the appellate courts have held that where an automobile subject to a conditional sale contract made in one state and properly recorded therein, was moved to another state, the party

who bought such automobile from the conditional buyer within four months of its removal took title subject to the interest of the conditional seller even though the seller did not file such conditional sale contract within the four month period in the state to which the automobile was removed without the seller's consent.

11 UCC Rep.Serv. 381.

The court thus seems to have reached the conclusion that a security interest is absolutely perfected in Tennessee for four months. The court of appeals decision is doubtful authority since it was not officially reported. It is a good indicator of what the law is in Tennessee but is not precedent binding on a federal court applying Tennessee law. Wright, Miller & Cooper, Federal Practice & Procedure, Jurisdiction § 4507 (1982).

The Tennessee Supreme Court has also ruled in favor of a secured party who did not consent to removal of its collateral to Tennessee. *Ford Motor Credit Co. v. Quality Motors,* 541 S.W.2d 119 (Tenn. 1976). In that case, the debtor bought the car in Arkansas, a certificate of title state. A title certificate was issued showing the plaintiff as the first lienholder. The debtor took the car to Alabama, a non-title state, and obtained a receipt showing no liens. The debtor then sold the car to the defendant in Tennessee. The court held that the defendant took the car subject to the plaintiff's lien because the plaintiff had not consented to removal of the car from Arkansas.

The court could have reached the same conclusion under UCC § 9–103(4), without regard to whether the plaintiff consented to removal of the car from Arkansas. The court, however, only mentioned the UCC. After summarizing the consent rule, the court said, "We find nothing in the Uniform Commercial Code that changes this rule of law." 541 S.W.2d 121.

It is hard to believe the court had the four-month rule of § 9–103(3) in mind when it said this. Section 9–103(3) does not make

the four-month rule applicable only when the secured party consents to removal of the goods. Indeed, the four-month rule does not entirely make sense if it applies only when the secured party consents to removal of the goods. Why should the secured party who knows the goods are being moved to another state and consents to the move be given four months to perfect in the new state? This is especially troublesome if the four months is four months of absolute perfection. The official comment, quoted earlier, also implies that the secured party's consent is irrelevant. The comment says that the secured party is given four months to "discover" the removal of the collateral and take whatever additional steps are required for perfection in the new location. Professor Gilmore pointed out that consent or notice were meant to be irrelevant under § 9–103(3).

Section 9–103(3) establishes a four-month period, after which, unless there has been reperfection, a perfected out-of-state interest becomes unperfected. This rule applies whether the removal was with the secured party's consent or was unauthorized; it applies whether the secured party has notice of the removal or does not have notice (departing in this respect from the policy of § 14 of the Uniform Conditional Sales Act).

G. Gilmore, Security interests in Personal Property § 22.8 at 626 (1965).

Section 9–103(3) says when a security interest in incoming goods becomes unperfected. The court does not see how a security unperfected under the statute can be treated as perfected because the secured party did not consent to removal of the goods to Tennessee, at least in cases where no actual fraud was involved in removal of the goods.

The consent rule and the four month rule of § 9–103(3) apparently cannot be reconciled. The court believes, however, that the Supreme Court's decision can be reconciled with the four-month rule.

When the Supreme Court said that it found nothing in the UCC to change the consent rule, it must be taken as having referred to the UCC provisions that would have controlled the case. Section 9–103(4) should have controlled and should have led to the same result as the consent rule. The court concludes that the decision simply does not apply to this case.

On the other hand, time is relevant under the consent rule. The Tennessee Supreme Court, quoting from an earlier case, said:

The rule in this state ... is that the priority of a chattel mortgage validly executed and legally registered in another state, according to the laws of that state wherein the property was and the mortgagor resided, will be recognized and enforced in this state against the claims of attaching creditors, or innocent purchasers here, unless the mortgagee has consented to the *removal* of the property into this state, or having knowledge of its removal here, has failed to assert rights under the mortgage within a reasonable time.

541 S.W.2d 120, quoting *Finance Corp. v. Motor Co.*, 170 Tenn. 28, 33, 91 S.W.2d 297, 299 (1936).

The court thinks that the plaintiffs had plenty of time from February and March, 1980, until the trustee disposed of the parts in September, 1980 to discover the removal of the parts to Tennessee and assert their interest. The plaintiffs knew that the Tennessee dealership was a related corporation to the South Carolina dealership. In the summer of 1980 Mr. Williams knew the Tennessee dealership was in bankruptcy but seems never to have inquired specifically whether it had received the inventory from the closed South Carolina dealership.

The official comments to § 9–103 are not part of the statute but are probably consistent in their use of UCC terminology. In this respect, the use of "discover" in the official comment was probably intentional. "Discover" means to acquire actual knowledge of fact, as distinguished from "reason to know", which means learning other facts that should lead to the conclusion that the fact in question exists. Tenn.Code Ann. 47–1–201(25).

■ The court thus concludes that the consent rule was modified by § 9–103(3) to the extent that the secured party has only four months to discover the removal of the collateral to Tennessee and take any further action required to perfect its security interest in Tennessee.

The court has already concluded that statutory construction favors the conditional perfection interpretation of § 9–103(3). It should also be adopted for practical reasons.

Consider the common situation in which goods are brought into Tennessee and Tennessee law requires some additional step, such as filing, to perfect a security interest in the goods. Under either the absolute perfection rule or the conditional perfection rule, there is a four-month danger period. Any interest acquired in the four months may be subordinate to a security interest perfected in another state. Under the conditional perfection rule, this danger ceases after four months if the security interest has not been perfected in Tennessee. This may seem unfair if the debtor brings the goods into Tennessee, waits four months, and then sells them. The debtor can deprive the secured party of its collateral against its will. The secured party, however, has four months to discover that the debtor has moved the collateral and to perfect in the new state or to repossess if moving the collateral was a default. Four months is ample time especially since § 9–103(3) is meant to apply to many other situations. The debtor may not have brought the goods into Tennessee. The debtor may have transferred the goods to a third party who brought them into Tennessee. The goods may have been transferred several times within the four months. See *Arrow Ford, Inc. v. Western Landscape Construction Co.,* 23 Ariz.App. 281, 532 P.2d 553, 16 UCC Rep.Serv. 1124 (1975). The question is how long should the security interest be perfected against intervening parties without notice when perfection is required as a means of giving notice. The court is of the opinion that, in the absence of adoption of the 1972 version of § 9–103, the conditional perfection rule better serves the interests of fairness and commerce and would be adopted by the Tennessee Supreme Court as the better rule.

Since the plaintiffs failed to file a financing statement in Tennessee during the four months, their security interest became unperfected as to the trustee and the bank, unless their rights against the plaintiffs were somehow frozen at the time of bankruptcy.

■ The general rule is that the rights of the parties in the debtor's property are determined as of the time of bankruptcy. 4 Collier on Bankruptcy ¶ 541.04 (15th ed. 1983). The statutes, however, allow a security interest in the debtor's property to be perfected after bankruptcy when state law allows such perfection to relate back to an earlier date so that the security interest will be treated as perfected at the time of the debtor's bankruptcy. 11 U.S.C. §§ 547(b) & 362(b)(3). This obviously means that perfection of a security interest is not fixed at the time of bankruptcy if perfection is conditional on performing some later action to make the perfection relate back.

■ The result is that the plaintiffs' security interest became unperfected against the trustee because of the plaintiffs' failure *to file a financing statement within four months after the parts arrived in Tennessee.*

The plaintiffs also failed to assert their security interest against the trustee during the four months. It is not sufficient that the trustee could have or may have discovered the security interest during the four months.

The trustee abandoned the bankruptcy estate's interest in the parts and the debtor allowed the bank to repossess. The bank took the parts and sold them at auction. However, under an agreement with the trustee, the bank returned the proceeds of the sale after it later collected the proceeds of life insurance on Ken Gardner, Sr.

■ The trustee's rights in the parts and the proceeds from their sale was superior

**112**

to the plaintiffs' unperfected security interest. 11 U.S.C. § 544; Tenn.Code Ann. § 47–9–301(1)(b). The trustee was entitled to keep the parts and all the sale proceeds for the benefit of the bankruptcy estate to the exclusion of the plaintiffs' rights. 11 U.S.C. § 550. Since this was the ultimate outcome, the plaintiffs were not harmed by the disposition of the parts and cannot recover.

Apparently the bank's security interest also became superior to the plaintiffs' security interest. Thus, the bank and the trustee both had rights superior to the plaintiff's security interest. If the bank had been allowed to foreclose and the sale proceeds had exceeded its secured debt, the trustee, not the plaintiffs, would have been entitled to the excess. Thus, no matter how the facts are viewed, the plaintiffs cannot recover.

█  The plaintiffs argued that the transfer of the parts to the Tennessee dealership was somehow fraudulent as to them and the trustee's rights were affected by the fraud. The evidence, however, showed that the transfer was an honest transaction between related corporations. The dealership in South Carolina was closed or in the process of being closed. It owed substantial debts to the Tennessee dealership. The parts were transferred to the Tennessee dealership and credited against the debts of the South Carolina dealership. (Testimony of Linda Gilbert and Jack London).

Accordingly, the court will enter judgment for the defendants.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.