No. 22,531.

W. E. DAVIS, *Plaintiff*, v. WALTER E. WILSON, as Bank Commissioner, etc., *Defendant*.

### SYLLABUS BY THE COURT

1. MANDAMUS—*Requiring State Officer to Perform a Ministerial Duty— Not an Action Against the State.* An application for a writ of mandamus to require the bank commissioner to issue to a depositor in an insolvent bank of which he has taken charge a certificate (payable out of the assets of the bank, supplemented if necessary by the guaranty fund), the controversy turning upon the rate of interest such certificate should bear, and its determination depending upon the construction of the statute in relation to the matter, is not an action against the state, and is a proper proceeding for the purpose of procuring an interpretation of the statute.

2. BANK FAILURE—*State Guaranty Fund—Rate of Interest on Matured Certificates of Deposit—Original Contract Rate Governs.* Under the provision of the statute that upon taking charge of an insolvent bank the commissioner shall issue to each depositor a certificate (payable out of the assets, supplemented if necessary by the guaranty fund), "bearing six per cent interest per annum . . . except where a contract rate exists on the deposit, in which case the certificate shall

bear interest at the contract rate," the holder of a certificate of deposit maturing after the closing of the bank, drawing interest by its terms at the rate of 4 per cent per annum "for the time specified only" (that is, until maturity), is entitled to a commissioner's certificate bearing interest at 4 per cent until paid, and not to one bearing interest at 6 per cent after the date of maturity of the certificate of deposit issued by the bank.

Original proceeding in mandamus.    Opinion filed November 8, 1919.    Writ denied.

*Clad Hamilton,* and *Clay Hamilton,* both of Topeka, for the plaintiff.

*R. J. Hopkins,* attorney-general, and *C. A. Matson,* assistant attorney-general, for the defendant.

The opinion of the court was delivered by

MASON, J.: On May 29, 1919, the state bank commissioner, finding the Kansas State Bank of Salina, Kan., to be insolvent, took charge thereof for the purpose of winding up its affairs, and appointed a receiver, who has since had control of them. The bank had complied with the provisions of the state guaranty law, and its depositors were guaranteed by the depositors' guaranty fund.  The statute provides that after the bank commissioner has taken charge of an insolvent bank "he shall at the earliest moment, issue to each depositor a certificate upon proof of claim, bearing six per cent interest per annum, upon which dividends shall be entered when paid, except where a contract rate exists on the deposit, in which case the certificate shall bear interest at the contract rate." (Gen. Stat. 1915, § 598.)   W. E. Davis, the holder of a certificate of deposit issued by the bank July 1, 1918, payable on the return of the certificate "twelve months after date with interest at the rate of 4 per cent per annum for the time specified only," asked the bank commissioner for the issuance of a certificate on account thereof bearing interest at 4 per cent per annum from July 1, 1918, to July 1, 1919, and thereafter at 6 per cent.  The request was refused, on the ground that 4 per cent is the "contract rate" under the provision of the statute above quoted, and that the certificate to be issued to the applicant should bear no greater rate than that.   To test the matter,

the applicant has filed a petition for a writ of mandamus directing the issuance by the bank commissioner of a certificate bearing 6 per cent interest after July 1, 1919. The commissioner contends that, assuming the allegations of the petition to be true, the plaintiff is not entitled to a writ, and upon the questions of law thus arising the matter is now submitted to the court.

1. The point is raised that the proceeding cannot be entertained because it is in effect an attempt to sue the state without its consent having been given. Under the allegations of the petition it is the duty of the bank commissioner to issue to the plaintiff a certificate against the guaranty fund, which, from July 1, 1919, should bear interest at 6 per cent per annum if the plaintiff's interpretation of the statute is correct; otherwise at 4 per cent until paid. The arguments disclose that the commissioner's refusal to issue the certificate demanded was based upon the belief that it should bear but 4 per cent. The commissioner's duty in the matter, so far as it turns upon the construction of the statute, is purely ministerial, and subject to control by mandamus. (*Construction Co. v. Sedgwick County,* 100 Kan. 394, 396, 164 Pac. 281; *Cates v. Knapp,* 104 Kan. 184, 178 Pac. 447.) We do not wish to be understood as now deciding, however, that in case an issue of fact should be raised as to the validity of the certificate of deposit held by the plaintiff that the settlement of that question would be undertaken in a proceeding in mandamus.

2. The statute does not provide in terms or in effect that the certificate issued to the depositor in a suspended bank by the state bank commissioner shall bear interest at the same rate for which the bank itself would have been liable. It says that "where a contract rate exists on the deposit" "the certificate shall bear interest at the contract rate." Here a contract rate existed on the deposit. It was 4 per cent. There was no other contract rate. It is doubtless true that if, while the bank had been a going concern, the certificate of deposit had matured, and payment of it had been refused on due presentation, the bank would have been liable to the depositor for interest thereafter at the rate of 6 per cent; and possibly the bank itself is so liable to the plaintiff at this time (7 C. J.

651), subject to the right of the state to control the apportionment of its assets after insolvency, so far at least as concerns claims for statutory interest. Whatever liability for 6 per cent interest exists is because of the statute and not because of the contract; the 6 per cent rate is statutory, and not contractual. The provisions of the guaranty act are of course to be regarded as drawn with especial reference to the application of the guaranty fund to the claims of creditors of the bank after its assets have been exhausted. The inference from the words quoted that the legislature did not intend the depositor's claim against that fund (or against the assets in control of the state) to be necessarily the precise amount of his claim against the bank, is strengthened by the fact that, in an earlier stage of the progress of the bill, provision was made for the payment of a fixed rate of interest, "except where a contract exists to the contrary, when such contract shall be carried out." (Senate Journal, 1909, p. 339.) The change made in the phraseology suggests a purpose to require the depositor to be content with the rate of interest he had contracted to accept, rather than that his legal rights as against the bank should be carried over against the guaranty fund. The provision as to the interest to be borne by the certificates issued by the bank commissioner is now the same as when the law was enacted in 1909. In the original act deposits bearing more than 3 per cent interest were not allowed participation in the guaranty fund (Laws of 1909, ch. 61, §§ 6, 7), so that the contract rate on participating claims would necessarily be less than the "legal rate" of 6 per cent. It seems quite probable that the legislature, instead of intending to preserve against the guaranty fund the same rights which the depositors respectively possessed against the bank, designed to discriminate somewhat against the depositor whose money was earning something, in favor of him who was receiving nothing from it. If the legislature could have had in contemplation that some of the depositors in an insolvent bank might have been receiving a higher rate of interest than 6 per cent, it would be possible to suppose that the purpose, or one of the purposes, of the provision under discussion was to protect such depositors, and to secure to them the full fruits of their bargain with the bank. But in view of the fact that

the law in which the language in question originated denied all participation in the guaranty fund to depositors who had contracted for more than 3 per cent interest, that theory is entirely untenable. The desire to favor the depositor who was to receive no pay for his deposit, over him who was being paid for it, is quite intelligible, as designed to effect a sort of compensation for such inequality of treatment.

The fact that a certificate of deposit has a definite date of maturity, and by contract draws interest only until then, is all that gives room for an argument that its owner should have a claim against the guaranty fund for interest at 6 per cent at any period. In the case of a depositor who has a checking account on which he receives interest on daily balances, say of 2 per cent, it seems clear that his claim against the guaranty fund would bear only that rate; otherwise it would be difficult to make any application to that situation of the provision under consideration. And nothing in the act or in its history tends to suggest a purpose to treat the holder of an interest-bearing certificate any better than the owner of an interest-bearing checking account.

If the certificate of deposit had fallen due before the closing of the bank, and the owner had simply allowed his money to remain on deposit, without further arrangement, drawing no interest, and this condition had continued until the commissioner took possession, an entirely different question would be presented.

In behalf of the plaintiff, it is suggested that a certificate of deposit might draw interest at, say 2 per cent for one stated period, and 3 per cent for another. Such an arrangement is, of course, possible, if not probable. Whether in that case the commissioner's certificate should draw interest at the rate which happened to be in force when the bank was closed, or at some other rate, is a matter which need not now be determined.

The petition alleges that the particular certificate of deposit here involved was one of a number which were accepted by the owners of a deposit which the bank was unable to pay, in order to prevent the disastrous consequences which would have followed from the immediate closing of the bank. Whether or not this consideration might, in a case involving

the exercise of official discretion, justify a more favorable treatment of the holders of the certificates than they would otherwise be entitled to, it can have no weight as against the specific provision of the statute.

It being determined that the facts set forth in the petition do not entitle the plaintiff to a writ, the proceeding will be dismissed.