## Al Maroone Ford, Inc., to use, Appellant, v. Manheim Auto Auction, Inc.

Argued December 16, 1964. Before ERVIN, WRIGHT, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., and WOODSIDE, J., absent).

F. *Lyman Windolph,* with him *Windolph, Burkholder & Hartman,* for appellant.

*Richard M. Martin,* with him *John J. Stork,* for appellee.

OPINION BY FLOOD, J., March 18, 1965:

Gordon K. Brown and his wife, Avis, on April 6, 1961 bought a new automobile in Middleport, New York, from Al Maroone Ford, Inc., under an installment sales contract under which the seller retained title until full payment of the purchase price, and the buyers agreed not to sell or encumber the car or remove it from New York State without the seller's written consent.

The car was driven to the appellee's place of business in Manheim, Pa., on the same day and on the next day, April 7, 1961, Gordon K. Brown executed a New York certificate of sale for the car in favor of Manheim Auto Auction, Inc., the appellee, and delivered the car to it. The certificate indicated that Kirby's Used Cars was the "dealer". The case stated recites that Kirby's Used Cars was a trade name used by Gordon K. Brown and that the certificate indicated that Kirby's Used Cars was the owner of the car.

On April 6, 1961, the seller assigned the contract to the Bank of Buffalo, the use-plaintiff and appellant, and on April 12, 1961, the bank filed the contract in

the office of the Clerk of the Town of Newfane, New York. At this time New York had not yet adopted the Uniform Commercial Code. Under the New York Conditional Sales Act then in effect (40 McKinney's Personal Property Law, §§60-81) this filing, since it occurred within ten days of the execution of the contract, made the reservation of title valid against all persons under New York law, even though no notation of the seller's interest appeared on the title certificate. New York law did not require such notation. Under these circumstances, at the time Brown purported to sell the car to the appellee, the appellant held a perfected security interest in the car in Pennsylvania under §9-103(3) of the Uniform Commercial Code, 12A PS §9-103(3). *Casterline v. General Motors Acceptance Corporation,* 195 Pa. Superior Ct. 344, 171 A. 2d 813 (1961).[1]

Thereafter the appellant brought this action of replevin without bond against the appellee. Upon a case stated setting forth the above facts, the court below held that the appellee was a "buyer in ordinary course of business" under §1-201(9) of the Uniform Commercial Code and therefore took the car free of the seller's perfected security interest under §9-307(1) of the Code.

1. A buyer in ordinary course of business is defined in §1-201(9) of the Code as a "person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind . . . ." The appellant raises no question

---

[1] While §9-103(3) of the Uniform Commercial Code has been amended since the occurrence of the events considered in the *Casterline* case by the Acts of October 2, 1959, P. L. 1023, §9, and August 24, 1963, P. L. 1213, §§12, 13, the amendments do not affect this conclusion.

as to the appellee's good faith or knowledge of the appellant's rights. Therefore we shall assume its good faith and ignorance of the appellant's rights and confine our consideration to the question of whether it bought "in ordinary course from a person in the business of selling goods of that kind".

There is no evidence that the appellee purchased from one "in the business of selling goods of that kind", i.e., a dealer in automobiles, unless this can be inferred from the notation "Kirby's Used Cars, 2743 S. Main, Newfane, N.Y." in the space reserved for "name and address of dealer" on the certificate of sale, which appears to be a form prepared by the Bureau of Motor Vehicles of the State of New York. Under the case stated it appears that the appellee "is engaged inter alia in conducting public sales of new and used automobiles to dealers only". There is nothing in the agreed statement, however, as to the business of Gordon K. and Avis Brown, the original purchasers, nor as to the business of Gordon Brown, individually, except the recital in the case stated that he traded as Kirby's Used Cars, and the statement in the certificate of sale that Kirby's Used Cars was the dealer. There is nothing to indicate that Gordon K. Brown ever acquired title in his own name. He signed the certificate in his own name, not adding that he was trading as "Kirby's Used Cars". The car was a new automobile when the Browns bought it the day before in New York. While the certificate of sale executed by Brown to appellee indicates that the car was used, the word "New" was inserted in the box for the listing of the last plate number of the vehicle.

Under these circumstances, we cannot find from the agreed statement that the appellee purchased from a dealer or a "person in the business of selling goods of that kind". The recitals in the certificate of sale give rise, at most, to an inference that Gordon Brown was

the owner of the car and was trading as a dealer in used cars. These self-serving recitals do not constitute proof that Brown owned the car or was a dealer. The evidence is that he and his wife were the owners. The transaction with the appellee appeared to be a sale to a dealer, not a consumer.

The definition of "buyer in ordinary course" as one who buys "in ordinary course" from a dealer is in part circular. Under our cases a sale in the ordinary course normally means a sale from inventory. *Sterling Acceptance Co. v. Grimes,* 194 Pa. Superior Ct. 503, 168 A. 2d 600 (1961) ; *Weisel v. McBride,* 191 Pa. Superior Ct. 411, 156 A. 2d 613 (1959) ; *Main Investment Co. v. Gisolfi,* 203 Pa. Superior Ct. 244, 199 A. 2d 535 (1964). The comment of the draftsmen of the Code likewise states that the definition of "buyer in ordinary course of business" restricts it, for practical purposes, almost exclusively to inventory. It also states that in most of the cases covered the goods will in fact be inventory. Uniform Commercial Code, §9-307(1), comment 2, 12A PS §9-307(1), p. 422.[2] Nothing in the case stated indicates that there was a sale from inventory here.

We conclude that the appellee was not a buyer in ordinary course. Moreover, the facts that the car was a substantially new car, purchased for resale many miles away from the place of business of the sellers, by an auctioneer who has had experience with foreign security interests in automobiles,[3] without any inquiry,

---

[2] While this comment referred to the definition in the Code as originally passed in 1953, it is equally applicable to the amended Code.

[3] See *General Motors Acceptance Corp. v. Manheim Auto Auction,* 25 Pa. D. & C. 2d 179 (1961) (in which Manheim purchased an auto while subject to a New York security interest) and *Churchill Motors, Inc. v. Lohman, Inc.,* 229 N.Y.S. 2d 570 (1962) (in which a car subject to a Rhode Island security interest was sold at auction by Manheim, as agent.)

so far as the agreed facts show, as to existence of any such interest, all tell against the contention that the appellee was a buyer in ordinary course. Cf. *Raymond Car Sales, Inc. v. Motor Wholesalers, Inc.,* 211 N.Y.S. 2d 286, 290 (S. Ct. 1961).

2. Since Manheim is not a buyer in ordinary course under the Code, it may take against the appellant, the holder of a security interest, only "to the extent that [it] gives value and receives delivery of the collateral without knowledge of the security interest and before it is perfected". Uniform Commercial Code, §9-301-(1)(c), 12A PS §9-301(1)(c). Here the security interest of the appellant was perfected when the appellee bought the car (*Casterline v. General Motors Acceptance Corporation,* supra) and the appellee's purchase was subject to the security interest. Therefore, the sale of the car by the appellee was a conversion of the car as against the appellant.

The appellee argues that the appellant lost its perfected security interest by failing to file in accordance with the requirements of the Pennsylvania Uniform Commercial Code within four months after the car was brought into this State. Uniform Commercial Code, §9-103(3), 12A PS §9-103(3). However, the failure to file does not help the appellee who bought and sold the car during the time when the security interest was perfected. It did not give value or receive delivery before the security interest was perfected as required by §9-301(1)(c) of the Code, supra. At the time the four months expired the appellant had probably lost its right to the car itself. If it had been sold by Manheim to a buyer in ordinary course, filing would have been useless for the purpose of protecting the security interest against such a buyer. On the other hand such filing is not required to allow recovery against the appellee for the conversion of the car while

it was subject to the appellant's perfected security interest.

3. The appellee also argues that replevin without bond does not lie since the defendant no longer had possession of the car when the action was brought. The court below properly rejected this position. Replevin without bond, unlike common law replevin, is not confined to cases where the defendant has possession of the property which is the subject matter of the action. It is rather equivalent to the common law action of trover and seeks primarily damages for the conversion of the property, with the addition that the plaintiff has the right, at any time before judgment, to convert the action to replevin with bond and have the sheriff replevy the property. Pa. R. C. P. No. 1073(b). See discussions in 10 Standard Pennsylvania Practice §8, p. 431; and Goodrich-Amram, §1073(b).

The judgment is reversed and is entered in favor of the use-plaintiff, Bank of Buffalo, against the defendant, Manheim Auto Auction, Inc.

