No. 47,264

Mrs. Philip W. Smyth, *Appellant,* v. Adjutant General of the State of Kansas, *Appellee.*

(522 P. 2d 372)

Opinion filed May 11, 1974.

*Sam A. Crow,* of Crow & Skoog, of Topeka, argued the cause and was on the brief for appellant.

*Curt T. Schneider,* assistant attorney general, argued the cause, and *Vern Miller,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

Fatzer, C. J.: This is an appeal from an order dismissing an action for relief under the provisions of K. S. A. 1971 Supp. 48-261 providing compensation to surviving spouses of members of the Kansas National Guard whose death occurs in the line of duty. The facts are not in dispute.

The plaintiff is the widow of Brigadier General Philip W. Smyth who was assistant adjutant general for the state of Kansas. The deceased general, under orders from the adjutant general of Kansas

to perform active duty in connection with the governor's inauguration on January 11, 1971, was enroute to attend such ceremonies when he suffered a cerebral thrombosis. The general died some six hours later.

On January 25, 1971, the adjutant general initiated a "line of duty" investigation to determine qualifications for death benefits. The investigation was concluded February 10, 1971, and reads in part as follows:

"Final determination, in accordance with Chapter 48, Section 261, Military & Civil Defense Laws of Kansas is that death was IN LINE OF DUTY. Surviving spouse entitled compensation for hospital and medical care benefits for deceased husband. Reimburse for actual funeral expenses not to exceed the sum of $500.00 is determined to be [proper] compensation at the rate of $120.00 per month, plus 12½% of basic pay of Brigadier General with rate of pay established for over 41 years of creditable service be paid to surviving spouse from 13 January 1971 until surviving spouse dies or remarries, to be authorized in accordance with existing State law."

The plaintiff did not receive payment and an action was filed in the Shawnee district court requesting a declaratory judgment or in the alternative an order of mandamus to compel payment of the compensation. The adjutant general was the sole party defendant. Thereafter, the adjutant general filed a motion to dismiss the action wherein he acknowledged plaintiff was entitled to receive death benefits pursuant to the statute, but alleged he had fully performed all of his required duties in determining her entitlement, and that the State Finance Council had failed to transfer funds to enable payments to be made to the plaintiff.

The district court sustained the motion to dismiss, stating the following reasons:

"1. K. S. A. 48-271 provides that all benefits under the act are gratuities and no vested right shall accrue to any person to benefits not already received.

"2. The Adjutant General is an arm of the sovereign State of Kansas and no consent has been given for the State to be sued in this capacity.

"3. The Adjutant General has performed its duty in making a determination of the death of decedent and determining that plaintiff is entitled to benefits.

"4. Another arm of the State has failed to appropriate or furnish funds to pay the benefits.

"5. Plaintiff's remedy lies elsewhere."

The plaintiff has appealed. As the appellant, she contends the district court erred in following K. S. A. 1973 Supp. 48-271, which was enacted over a year after her husband's death (L. 1972, Ch. 206, § 11), rather than the statutory provisions in effect at the time

her rights vested on February 10, 1971. (K. S. A. 1971 Supp. 48-261.)

In this court the adjutant general continues his argument that he has fully performed his duties under K. S. A. 1971 Supp. 48-261 and the appellant's remedy lies elsewhere.

Considering first the statute which is applicable to this controversy, this court agrees with the appellant that the district court erred in applying the provisions of K. S. A. 1973 Supp. 48-271 which became effective on March 23, 1972—more than one year after appellant's rights had accrued.

Where vested rights will be disturbed, a statute will not be given retrospective application unless the wording of the statute makes such construction imperative. (*Johnson v. Warren,* 192 Kan. 310, 387 P. 2d 213; *Ellis v. Kroger Grocery Co.,* 159 Kan. 213, 152 P. 2d 860; *Bulger v. West,* 155 Kan. 426, 125 P. 2d 404; *Mirise v. Rathbun,* 152 Kan. 441, 104 P. 2d 420.)

The statutes applicable here are those which were in effect when the appellant's rights accrued. K. S. A. 1971 Supp. 48-261 (*a*) (L. 1968, Ch. 69, § 1) then in effect provided in part:

"Every member of the Kansas national guard . . . disabled or injured . . . in line of duty . . . when participating in any . . . activity under order of the commanding officer of his unit, or while traveling to or from his place of duty in such instance, shall be entitled to and shall receive, or be reimbursed (as follows). . . ."

Subparagraph (*c*) provided in part:

"If a member of the Kansas national guard . . . dies . . . [in line of duty] as provided in subsection (*a*) of this section, his estate shall be entitled to any reimbursement for which the deceased would have been entitled and to his accrued pay and allowances and compensation or reimbursement for actual funeral expenses not to exceed the sum of five hundred dollars ($500). His surviving spouse is entitled to receive a compensation of one hundred twenty dollars ($120) per month plus twelve and one-half percent (12½%) of the basic pay established for the member of Kansas national guard . . . until the surviving spouse dies or remarries. . . .

". . . The compensation or reimbursement, as well as the cost of carrying out the other provisions of this section, *shall be paid out of any funds in the state treasury available to or appropriated for the use of the military forces of this state* in the same manner provided for other expenditures of state funds. . . ." (Emphasis supplied.)

It is further provided in subparagraph (*d*):

"The adjutant general shall administer the provisions of this act and shall prescribe such rules and regulations not inconsistent with law as may be necessary to carry out the provisions of this act and the decision as to whether

. . . death is in line of duty . . . after proper investigation and hearing pursuant to such regulations as he may prescribe. . . ."

The statute clearly states the adjutant general is to administer the provisions of the Act and make payments out of *any funds* in the state treasury available to or *appropriated for the use of military forces of this state.* The statute's language expressly speaks to the adjutant general and no one but that official has any authority under the Act.

We turn now to the 1971 fiscal year appropriations for the military forces of this state. It is from those funds payment should have been made. Those appropriations are set out in the Laws of 1970, Chapter 42, which reads, in part:

"Part I.—STATE GENERAL REVENUE FUND
APPROPRIATIONS

\* \* \* \* \*

"Sec. 5. To the
"ADJUTANT GENERAL

"*Salaries and wages* ....................................... $249,233
Provided, That no moneys may be expended for armory drill pay or troop pay.

"*Other operating expenditures, rent of armories, pay of troops* ...... 668,483
Provided, That any unencumbered balance in excess of $100 as of June 30, 1970, is hereby reappropriated for fiscal year 1971: *Provided, however,* That expenditures from such balance shall not exceed $56,805 except upon approval of the state finance council: *And provided further,* That not more than $300 may be expended for official hospitality.

"*Salaries and wages—civil defense* .......................... 44,848"

\* \* \* \* \*

"Sec. 8. To the
"ADJUTANT GENERAL

"Civil defense—federal fund matching ...................... No limit
"Civil defense—federal fund matching—administration ......... No limit
"Civil defense—RADEF instrument maintenance ............... No limit
"Community shelter planning fund . ......................... No limit
"Kansas armory board—state contingent fund ................. No limit
"Conversion of materials and equipment—military division ... ... $2,067
"Conversion of materials and equipment—civil defense division.... 3,580
"*Payment of death, disability and medical benefit claims* ......... *No limit*
"*Provided,* That the state finance council is hereby authorized to transfer from the state emergency fund to this fund the amounts necessary to pay benefit claims as provided for in K. S. A. 1969 Supp. 48-261." (Emphasis supplied.)

In *Johnson v. Warren,* supra, the medical expenses of an injured workman exceeded the maximum benefits provided by the statute in

force at the time of the injury. The Legislature subsequently amended the relevant statute and increased the medical benefits allowable. The appellant contended he was entitled to medical treatment to the extent of the subsequently increased medical benefits. Finding the contention without merit, we said:

"From the foregoing it is clear that claimant's cause of action for compensation accrued on the date of his injury. On that date the statute in full force and effect set a limitation of $2,500 for medical expenses. The respective rights and obligations of the parties became fixed on that date. The 1961 amendment, which raised the limitation of liability for medical expenses to the sum of $4,000, contains nothing to indicate an intention that it should be applied retrospectively. The amendment was not procedural and remedial in nature— but affected substantive rights of parties under the compensation act with respect to injuries susained subsequent to its effecive date." (l. c. 314.)

Under K. S. A. 1973 Supp. 77-201, *First*, the repeal of a statute does not affect any right which accrued, any duty imposed, or any proceeding commenced, under or by virtue of the statute repealed. (*State v. Cramer*, 196 Kan. 646, 413 P. 2d 994; *School District v. Board of County Commissioners*, 201 Kan. 434, 441 P. 2d 875.)

In the instant case the benefits due the appellant were fixed on February 10, 1971, when the adjutant general found her husband's death occurred in the line of duty. (K. S. A. 1971 Supp. 48-261.) Thereafter, payments due the appellant were to be made out of any funds in the state treasury available to or appropriated for the use of military forces of this state. This is provided by the law creating the obligation. The fact that K. S. A. 1971 Supp. 48-261 was subsequently repealed (L. 1972, Ch. 206, § 1) did not affect the appellant's right to compensation which accrued February 10, 1971, as previously indicated. (K. S. A. 1973 Supp. 77-201, *First.*) We note in passing the adjutant general may seek reimbursement from the state finance council for benefit claims paid the appellant as the surviving spouse. While the transfer of funds by the state finance council is optional, the right of the appellant to receive the benefits provided by the statute is not.

We are not advised as to what funds are in the various accounts created for the use of the military forces of this state, and, no doubt, the books for the fiscal year 1971 have been closed and any balance existing in the funds have reverted to the general revenue funds of the state. However, the books were open when the appellant's rights under the statute vested and her claim should have been

paid. As we have said before, "[t]here is no magic in bookkeeping. Books which may have been closed in derogation of a lawful outstanding claim which had been provided for by the legislature must be reopened and the claim paid and proper entries made to recite the pertinent facts." (*Hicks v. Davis,* 97 Kan. 312, 317, 154 Pac. 1030.) But this court does not intend to limit payment of the appellant's claims from funds appropriated for the military forces of this state for the 1971 fiscal year. Any funds subsequently appropriated for such purpose may be used by the adjutant general in payment of her claims. In turn, the adjutant general, not the appellant, may seek reimbursement for such payments from the state emergency fund.

There is nothing to justify the district court's conclusion that, "[t]he Adjutant General is an arm of the sovereign State of Kansas and no consent has been given for the State to be sued in this capacity." The applicable statute granted appellant as the surviving spouse certain benefits to be computed as indicated in the statute. The state having granted such benefits cannot raise now the doctrine of sovereign immunity. The doctrine has no application to the case at bar.

The law pertaining to the claim in question leaves no duty imposed upon the adjutant general, after his finding heretofore quoted, except the ministerial one of executing the express will of the Legislature. A public officer or employee cannot frustrate the express will of the Legislature by refusing to perform a well defined ministerial act. A similar matter was considered in *Davis v. Bank Commissioner,* 105 Kan. 560, 185 Pac. 41, and we said:

". . . The commissioner's duty in the matter, so far as it turns upon the construction of the statute, is purely ministerial, and subject to control of mandamus. (*Construction Co. v. Sedgwick County,* 100 Kan. 394, 396, 164 Pac. 281; *Cates v. Knapp,* 104 Kan. 184, 178 Pac. 447). . . ." (l. c. 562.)

The court is of the opinion that mandamus is available, if necessary, to secure payment of the benefits due the appellant pursuant to the statute and findings of the adjutant general. It is irrational to to have the Legislature grant disability or death benefits to members of the Kansas National Guard or their surviving spouses, and then permit an officer or agency of the state to frustrate the statutory plan. The law is not so deficient. (*Vickers v. Wichita State University,* 213 Kan. 614, 518 P. 2d 512.)

The judgment of the district court is reversed with directions that

upon failure of the adjutant general to comply with the views expressed in this opinion within 30 days from the date of the mandate of this court, an order of mandamus shall issue commanding such official to compute and pay the amount due the appellant under the provisions of K. S. A. 1971 Supp. 48-261 and the findings of the adjutant general, and to continue such payments until her claim is satisfied in full.

It is so ordered.