No. 47,600

AMERICAN STATE BANK, *Appellant,* v. LUTHER WHITE, *Appellee.*

(535 P. 2d 424)

Opinion filed May 10, 1975.

*Stephen D. McGiffert,* of Kansas City, argued the cause, and *R. Pete Smith* and *C. Wayne Case,* of Rice, Baska & Smith, of Kansas City, were on the brief for the appellant.

*Robert J. Watson,* of Kansas City, argued the cause, and *Robert L. Serra,* of Kansas City, was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal by the American State Bank of Oklahoma (plaintiff-appellant) from an order of the trial court dismissing its replevin action to recover an automobile upon default of installment payments. The automobile was financed by the bank in Oklahoma, but removed to the State of Kansas by the owner and sold to a *bona fide* purchaser who had no notice of the lien against the automobile.

The question presented on appeal is the construction of K. S. A. 84-9-103 (3) of the Uniform Commercial Code.

The facts may be briefly stated. On May 5, 1972, one Carl Ruff, an Oklahoma resident, purchased a 1972 Continental Mark IV automobile (serial number 2Y89A833786). Mr. Ruff financed this purchase by obtaining a loan from the American State Bank in Oklahoma in the amount of $8,500 in return for his promissory note in the amount of $9,777.36, which included interest, and an agreement securing the bank's interest in the automobile. The security interest was duly perfected by filing a standard form Uniform Commercial Code financing statement with the county clerk of Tulsa County, Oklahoma.

At the time of the purchase, Mr. Ruff received a certificate of title for the automobile. However, there was no indication on the title certificate of the appellant's security interest in the automobile. Oklahoma law does not require a notation of liens to be made on the certificate of title. 47 Okla. Stat. Anno. § 23.6 provides that on the sale or transfer of an automobile the vendor shall assign his title to the vendee "with a statement of all liens or encumbrances on said vehicle," but the Oklahoma Supreme Court has ruled that an Oklahoma certificate of title "is not a muniment of title which establishes ownership," and has indicated that a third party must

be cautious about relying on such a certificate to show ownership. (*Medico Leasing Company v. Smith,* 457 P. 2d 548 [Okla. 1969]; *Wren v. Bankers Investment Co.,* 207 Okla. 339, 249 P. 2d 712 [1952]; *City Nat. Bank & Trust Co. v. Finch,* 205 Okla. 340, 237 P. 2d 869 [1951]; and *Adkisson v. Waitman,* 202 Okla. 309, 213 P. 2d 465 [1949].)

After the purchase, but at a time not disclosed by the evidence, Ruff removed the automobile to Kansas without the bank's knowledge. In March 1973, Ruff sold the automobile and assigned the certificate of title to Luther White (defendant-appellee). On March 8, 1973, White issued a check to the order of Ruff Tire in the amount of $2,294.41. Written in the left-hand margin of the check was the following: "Bal. paid in Full For 1972 Mark IV." White answered in the request for admissions that at the time of the sale Ruff explained that the automobile was free of any liens; that he did not check with the county clerk of Tulsa County, Oklahoma, to see whether the bank had filed a financing statement on the automobile; however, he expected the State of Kansas to check with the appropriate authorities before issuing a new Kansas title.

Apparently Ruff continued to make payments to the appellant bank until August 1973, when he defaulted, and according to the terms of the note the entire remaining balance of $6,805.75 became due and owing.

Thereafter the bank made demands upon Ruff for payment of the note or possession of the automobile, but he has refused to do either.

On November 16, 1973, approximately eight months after the sale in Kansas, the bank instituted this action seeking to replevin the 1972 Continental Mark IV automobile.

At no time did the appellant bank perfect its security interest in Kansas within four months as required by K. S. A. 84-9-103 (3).

After the petition, answer, request for admissions and the bank's response thereto had been filed, the bank moved for summary judgment (K. S. A. 60-256) claiming there was no fact in dispute; that the only question remaining was a question of law; and that the appellant bank was entitled to judgment as a matter of law.

The appellee White moved for a dismissal of the action on the following grounds:

"1. Kansas should not recognize Oklahoma statutes as against the rights and privileges of Kansas citizens when such statutes are against public policy, generally oppressive, and conflict with the intent of Kansas statutes.

"2. The facts in this case fall within the exception to the comity recognition of foreign recorded security interests, because the evidence shows plaintiff had knowledge of and consented to the removal of the automobile to Kansas and failed to perfect its security interest in this state.

"3. Defendant, as a buyer in ordinary course of business, takes free and clear of a security interest created by his seller whether defendant knew of the security interest or not."

The trial court sustained the appellee's motion to dismiss for the reasons stated in its memorandum:

"It is found by the Court that the security interest covering the vehicle involved was legally perfected according to the statutes of the State of Oklahoma, and that K. S. A. 84-9-103 applies to this transaction. However, we must look to this transaction as a whole, and it is the finding of the Court that the failure of the plaintiff to perfect the security interest in this state within a 4-month period after the removal of the property from the State of Oklahoma requires that the motion of the defendant to dismiss be, and it is hereby, sustained."

The pertinent portion of K. S. A. 84-9-103 (3) provides:

"If personal property other than that governed by subsections (1) and (2) is already subject to a security interest when it is brought into this state, the validity of the security interest in this state is to be determined by the law (including the conflict of laws rules) of the jurisdiction where the property was when the security interest attached. . . . *If the security interest was already perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, the security interest continues perfected in this state for four months and also thereafter if within the four month period it is perfected in this state.* The security interest may also be perfected in this state after the expiration of the four month period; in such case perfection dates from the time of perfection in this state. If the security interest was not perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, it may be perfected in this state; in such case perfection dates from the time of perfection in this state." (Emphasis added.)

Under the appellant's construction of 84-9-103 (3), *supra*, if secured property is removed to this state from a jurisdiction where a valid perfected security interest exists, that security interest will be absolutely perfected in this state for a period of four months, and consequently a purchaser during the four-month period following the removal of the secured property to this state, takes the property subject to the foreign security interest. According to the appellant this case must be remanded to the trial court for a finding of fact as to when the automobile was removed to the State of Kansas so that it can be determined whether or not the appellee purchased it within four months of its removal to this state.

The appellee's position is that a buyer of property secured according to the laws of another state, within four months of its removal into this state, would acquire an interest junior to that of the original secured party during the four-month period; however, upon the expiration of the four-month grace period, if the out-of-state security interest has not by that time been perfected within the second state, the buyer's junior interest matures into the superior interest.

Under the rule of comity prior to the adoption of the U. C. C., this state recognized that "where a chattel mortgage had been properly filed and thereby priority of lien preserved, upon removal of the mortgaged property to another state, it was not necessary in order to preserve the lien that the mortgage be filed in the state to which removal had been made." (*Hess-Harrington, Inc. v. State Exchange Bank,* 155 Kan. 118, 122 P. 2d 739, Syl. ¶ 1; and *Home Finance Corporation v. Cox,* 190 Kan. 553, 376 P. 2d 884), but if the mortgagee had notice of the removal of the chattel to Kansas, he had to record here. (*Home Finance Corporation v. Cox,* supra.) This was in line with the generally accepted view (78 C. J. S. Sales § 568, p. 281) though there were a few jurisdictions that placed the risk of loss upon the conditional vendor. Consequently, under the general rule the mortgagee's security interest remained perfected, after removal to the second state, for an indefinite period of time and the purchaser for value without notice of the security interest was not protected. It is in this context that the promulgation of 84-9-103 (3), *supra,* must be examined.

The Official U. C. C. Comment is:

". . . Subsection (3) proceeds on the theory that not only the secured party whose collateral has been removed but also creditors of and purchasers from the debtor in this state should be considered. The four month period is long enough for a secured party to discover in most cases that the collateral has been removed and to file in this state; thereafter, if he has not done so, his interest, although originally perfected in the state where it attached, is subject to defeat here by those persons who take priority over an unperfected security interest (see Section 9-301). Under Section 9-312 (5) the holder of a perfected conflicting security interest is such a person even though during the four month period the conflicting interest was junior. Compare the situation arising under Section 9-403 (2) when a filing lapses."

The following Kansas Comments are consistent with the Official Comment:

". . . If the security interest was perfected where the property was located when the security interested attached, it remained perfected in this state for four months after the collateral was brought here. Thereafter, the

secured party had to perfect his interest in Kansas. If not perfected before the expiration of the four-month period, the subsequent perfection of a security interest in Kansas dated from the time of perfection in this state; there was no 'relation back.' Kansas has held a chattel mortgage perfected in the state where the property was located and the mortgage executed would be recognized (National Bank v. Massey, 48 K. 762, 30 P. 124 (1892)), but if the mortgagee had notice of the removal of the chattel to Kansas, he had to record here. Home Finance Corp. v. Cox, 190 K. 553, 376 P. 2d 884 (1962). The Code assumes the secured party will or should learn of removal of the property within four months, and must then perfect his interest. This policy may better protect creditors and purchasers in this state than did the prior Kansas law."

One of the earlier decisions construing 84-9-103 (3), *supra,* is *Churchill Motors v. Lohman, Inc.,* 16 A. D. 2d 560, 229 N. Y. S. 2d 570 (1962). There a security interest in an automobile was perfected according to Rhode Island law by execution of the sales contract and delivery of the automobile (filing in Rhode Island was unnecessary). Thereafter, the automobile was removed to Pennsylvania where it was sold within four months. The New York Supreme Court made the following observations concerning the policy behind 84-9-103 (3):

"As will be seen upon a reading of the quoted subsection, the draftsmen of the code decided that the conditional vendor ought to try to keep track of the location of the property covered by the conditional sale agreement and, if he discovered that the property had been taken to another State, he ought to take reasonably prompt steps to give notice to the public of his interest in accordance with the law of that State. On the other hand, subsequent purchasers and lienors in the State to which the property had been taken would have to take the risk of there being an outstanding security interest in the State from which the property had come, if they purchased the property or acquired a lien upon it shortly after it had been brought into the State and before the vendor had had an opportunity to discover the facts and to perfect his security interest in accordance with the law of the State. A four-month period was chosen as a reasonable period within which the vendor ought to be able to locate the property and to perfect his security interest in the State to which the property had been taken. . . ." (pp. 562, 563.)

It was argued in *Churchill,* as the appellee argues in the instant case, that if the conditional vendor fails to file a security interest within four months after the removal, his security interest would lapse and become subordinate to the interest of an individual who purchased the automobile within the four-month period. But the court in *Churchill* responded:

". . . Under the provisions of the Uniform Commercial Code, the conditional vendor's interest continued to be a perfected interest for four

months. At the end of that period, it ceased to be a perfected interest and became an unperfected one *but there is no provision which forfeits the four-month period of protection because of the failure to file prior to its expiration.* The four-month period under the Uniform Commercial Code is thus different from the 10-day grace period allowed under the New York conditional sales law for the original filing of a conditional sale contract (Personal Property Law, § 65). Under the New York statute, if the contract is filed within 10 days, the interest of the vendor is deemed perfected from the beginning but if he fails to file within 10 days, then the security interest of the vendor remains unperfected from the time of the original sale. (See the provision for a similar 10-day grace period for filing with respect to a purchase-money security interest in subsection [2] of section 9-301 of the Uniform Commercial Code.) In contrast with this, the four-month period provided in subsection (3) of section 9-103 of the Uniform Commercial Code is not a grace period for filing; *it is an absolute period of protection of the vendor's security interest* designed to give him adequate time to make an investigation and to locate the property. If the vendor fails to file within the four-month period, the protection of his security interest ceases upon the expiration of that period and his unperfected security interest is thereafter subject to being defeated in the same way in which any unperfected security interest may be defeated under the code. A subsequent purchaser for value without notice of the unperfected security interest would take a title superior to it (Uniform Commercial Code, §§ 9-301, 9-307, 1-201, subsection [9]). But a prior purchaser who had purchased during the four-month period of statutory protection is not retroactively given a superior title. He is not in the same position as a subsequent purchaser who acquired his interest after the expiration of the four-month period. . . ." (Emphasis added.) (pp. 566, 567.)

Cases in accord with *Churchill's* four-month absolute period of protection interpretation include: *The First Nat'l. Bank of Bay Shore v. Stamper,* 93 N. J. Super. 150, 225 A. 2d 162 (1966); *Community Credit Co. v. Gillham,* 191 Neb. 198, 214 N. W. 2d 384 (1974); *Morris v. Seattle-First Nat'l Bank,* 10 Wn. App. 129, 516 P. 2d 1055 (1973); *Newton-Waltham Bank v. Bergen Motors,* 68 Misc. 2d 228, 327 N. Y. S. 2d 77 (1971); *Pascack Valley Bank & Trust Co. v. Ritar Ford, Inc.,* 6 Conn. Cir. 489, 276 A. 2d 800 (1970); *Al Maroone Ford v. Manheim Auto Auc.,* 205 Pa. Superior Ct. 154, 208 A. 2d 290 (1965); and see 42 A. L. R. 3rd 1168, 1187.

We believe the *Churchill* opinion reflects the proper interpretation of 84-9-103 (3), *supra.* Recognizing that uniformity of decisions construing the U. C. C. is as desirable as the adoption of the U. C. C. itself, we conclude that *Churchill* and the cases following it should control the disposition of the instant case. Under this construction, the adoption of the U. C. C. in Kansas has merely modified former substantive case law (as previously discussed) by

limiting the period of time during which a foreign lienholder would have absolute priority over a Kansas purchaser to a period of four months, unless further affirmative action is taken in Kansas under the U. C. C. to perfect the security interest.

The appellee cites Vernon, *Recorded Chattel Security Interests in the Conflict of Laws,* 47 Iowa Law Rev. 346, 377-78 (1962); and J. White and R. Summers, *Uniform Commercial Code,* 848-850, § 23-18 (1972). These writers interpret 84-9-103 (3), *supra,* as the appellee would have it construed.

K. S. A. 84-9-103 (3) declares, with certain exceptions not applicable to the case at bar, that if personal property is already subject to a security interest when brought into this state, "the validity of the security interest in this state is to be determined by the law (including the conflict of laws rules) of the jurisdiction where the property was when the security interest attached." It is conceded the appellant fully complied with the Oklahoma law in perfecting its security interest by filing, and that notation of the outstanding security interest on the certificate of title was unnecessary. We are therefore obligated under the statute to attribute full faith and credit to the appellant's perfected security interest, and we may not require more from the appellant in perfecting its security interest than is required by its own state. We have construed 84-9-103 (3), *supra,* as providing four months of absolute protection, after removal from the State of Oklahoma, when the security interest was properly perfected in the original state, and there is no allowance in the statute for deviating from that rule simply because the original state did not require notation of outstanding security interests on the certificate of title. It should be noted in *Churchill,* supra, Rhode Island (where the security interest had been perfected) did not even require filing of the security interest, much less a notation of the outstanding security interest on the title.

The appellee calls our attention to Kansas Senate bill No. 27. It is argued this bill contains clarification of the legislative intent behind 84-9-103 (3), and that we should consider this bill in construing 84-9-103 (3) as it existed when the events giving rise to the instant case occurred.

Section 6 (2) (*d*) of Senate bill No. 27 reads as follows:

"*If goods are brought into this state while a security interest therein is perfected in any manner under the law of the jurisdiction from which the goods are removed and a certificate of title is issued by this state and the certificate does not show that the goods are subject to the security interest or that they*

*may be subject to security interests not shown on the certificate, the security interest is subordinate to the rights of a buyer of the goods who is not in the business of selling goods of that kind to the extent that he gives value and receives delivery of the goods after issuance of the certificate and without knowledge of the security interest."*

As of this date the bill has been passed by the legislature and approved by the governor. Section 38 provides that the Act shall take effect and be in force from and after January 1, 1976, and its publication in the statute book.

The foregoing amendment of 84-9-103 (3) is the direct result of the final report of the Review Committee for Article 9 of the Uniform Commercial Code (1971). The report contains the following comment concerning the amendment:

"F-23. The effect of lapse after four months of a security interest perfected without local filing on rights arising within the four months is not specifically covered in the present Code, but is referred to in existing Comment 7 to Section 9-103. Subparagraph (1) (*d*) (*i*) of the proposed revision makes clear that after lapse the security interest is deemed unperfected as against a person who became a purchaser after the removal. *First National Bank of Bay Shore v. Stamper*, 93 N. J. Super. 150, 225 A. 2d 162 (1966) held in substance that a buyer during the four month period was a converter of the car, at the suit of a bank whose security interest was perfected in the state from which the car was removed. The case entirely fails to consider the effect of the subsequent lapse of the security interest of the bank for failure to reperfect after the four months. While technically the conversion was complete at the moment of purchase, it is to be hoped that the proposed clarification of the effect of lapse will cause similar cases to be analyzed in the future in terms of priority, not of conversion. (Other aspects of the *Stamper* case are discussed in paragraph G-15 of this Statement)."

(Comment G-15, p. 240 of the final report discusses the applicability of 9-103 (4) to the *Stamper* factual situation. There is no contention 9-103 (4) is applicable to the case at bar.)

A statute does not operate retroactively, but operates prospectively, unless the intention of the legislature is clearly expressed by the statute that its provisions are to be applied retrospectively. (*Allen v. City of Ogden*, 210 Kan. 136, 499 P. 2d 527; and *Smyth v. Adjutant General*, 214 Kan. 715, 522 P. 2d 372.) Furthermore, under K. S. A. 1974 Supp. 77-201, *First*, the repeal of a statute does not affect any right which accrued, any duty imposed, any penalty incurred, nor any proceeding commenced, under or by virtue of the statute repealed.

Having construed 84-9-103 (3) as allowing the appellant bank four months of absolute protection, after the removal of the auto-

mobile to this state, it is necessary to remand the case to the trial court for an evidentiary hearing to determine the date the automobile was removed from Oklahoma to Kansas, to ascertain whether or not the appellee acquired his interest in the automobile during the period of absolute protection.

The judgment of the lower court is reversed with directions to proceed as above indicated.

FROMME, J., not participating.