UNITED STATES of America,
Plaintiff-Appellant,

v.

BURNETTE–CARTER COMPANY,
Defendant-Appellee.

No. 76–2109.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 2, 1978.

Decided May 15, 1978.

W. J. Michael Cody, U.S. Atty., Devon L. Gosnell, Asst. U.S. Atty., Memphis, Tenn., Ronald R. Glancz, Frederic Cohen, Appellate Sect., Civil Div., Dept. of Justice, Washington, D.C., for plaintiff-appellant.

James E. Threlkeld, G. Keith Rogers, Jr., Threlkeld & Howard, P. A., Memphis, Tenn., for defendant-appellee.

Before EDWARDS, CELEBREZZE and LIVELY, Circuit Judges.

CELEBREZZE, Circuit Judge.

This is an appeal by the United States from a summary judgment granted to defendant-appellee Burnette-Carter Company.

The complaint was filed on behalf of the Farmer's Home Administration of the United States Department of Agriculture (FmHA) and alleged that Burnette-Carter converted certain livestock subject to an FmHA security interest.[1] The primary issue on appeal is the validity of the security interest vis-a-vis Burnette-Carter under Uniform Commercial Code (UCC) § 9–103(3) (1962 Official Text).[2] We hold that the security interest was valid and reverse the judgment below.

Both parties moved the district court for summary judgment and the relevant facts are not in dispute. The FmHA made a loan to a Mississippi farmer, not a party to this action, pursuant to the Bankhead-Jones Farm Tenant Act, 7 U.S.C. §§ 1941 et seq. A financing statement was filed and all other steps were taken to properly perfect a security interest in Mississippi covering all of the farmer's livestock. Without the knowledge or approval of the FmHA, the farmer shipped the livestock from Mississippi to Tennessee (the "removal state") to be sold. The livestock were sold to bona fide purchasers at auction by Burnette-Carter, a Memphis commission livestock broker. There were several sales in this manner over two years, each sale occurring within four months of removal into Tennessee. The farmer did not apply any of the sale proceeds to the loan and defaulted on his loan repayments. The FmHA took no action to perfect its security interest in Tennessee.

1. Federal jurisdiction was based on 28 U.S.C. § 1345.

2. UCC § 9–103(3) (1962 Official Text):
   If personal property other than that governed by subsections (1) and (2) is already subject to a security interest when it is brought into this state, the validity of the security interest in this state is to be determined by the law (including the conflict of laws rules) of the jurisdiction where the property was when the security interest attached. However, if the parties to the transaction understood at the time that the security interest attached that the property would be kept in this state and it was brought into this state within 30 days after the security interest attached for purposes other than transportation through this state, then the validity of the security interest in this state is to be determined by the law of this state. *If*

The district court held that the FmHA could not recover in conversion since it had not filed a financing statement in Tennessee within four months of the collateral's removal. The court reasoned that UCC § 9–103(3), as codified in Tenn.Code Ann. § 47–9–103(3), required a secured party to file a financing statement in the removal state within the four month period and that absent such filing the security interest was deemed unperfected in the removal state retroactive to the date of the collateral's removal. Under this reasoning, the security interest was not perfected as to Burnette-Carter, and it could not be held liable for conversion. The FmHA argues that UCC § 9–103(3) gives four months of absolute protection to the secured party upon removal of the collateral, even without re-filing in the removal state, and that its security interest was therefore valid at the time of the sales in question.

■■■ There is no dispute that the FmHA is entitled to recover if it had a valid security interest at the time and place of sale. This court has held, on almost identical facts, that a livestock auctioneer who unauthorizedly sells property subject to a third party's security interest is liable in conversion to that third party even if the auctioneer has no knowledge of the security interest. *United States v. Carson*, 372 F.2d 429, 435 (6th Cir. 1967). The appropriate

*the security interest was already perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, the security interest continues perfected in this state for four months and also thereafter if within the four month period it is perfected in this state.* The security interest may also be perfected in this state after the expiration of the four month period; in such case perfection dates from the time of perfection in this state. If the security interest was not perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, it may be perfected in this state; in such case perfection dates from the time of perfection in this state. (Emphasis added).

measure of damages is the fair market value of the collateral at the time of the conversion. *Id.* Other circuits have uniformly reached the same conclusion on similar facts.[3] *United States v. E. W. Savage & Son, Inc.,* 475 F.2d 305 (8th Cir. 1973); *Cassidy Commission Co. v. United States,* 387 F.2d 875 (10th Cir. 1967); *United States v. Sommerville,* 324 F.2d 712 (3d Cir. 1963), *cert. den.* 376 U.S. 909, 84 S.Ct. 663, 11 L.Ed.2d 608 (1964); *United States v. Union Livestock Sales Co.,* 298 F.2d 755 (4th Cir. 1962); *United States v. Matthews,* 244 F.2d 626 (9th Cir. 1957). *See also United States v. Topeka Livestock Auction, Inc.,* 392 F.Supp. 944 (N.D.Ind.1975). This is also the clear majority rule among the states. *Annot.,* 96 A.L.R.2d 208, §§ 3 & 7; 3 C.J.S. Agency § 383.

■ We must now focus on whether the FmHA's security interest was valid vis-a-vis Burnette-Carter. There is a split among the circuits as to whether the federal courts should look to state law in making this determination or fashion a uniform federal rule. Following the dictates of *Clearfield Trust Co. v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), this court has held that a uniform federal rule is appropriate in FmHA security interest cases.[4] *United States v. Carson,* 372 F.2d 429, 431–35 (6th Cir. 1967). *Accord, United States v. Hext,* 444 F.2d 804 (5th Cir. 1971); *Cassidy Commission Co. v. United States,* 387 F.2d 875 (10th Cir. 1967); *United States v. Sommerville,* 324 F.2d 712 (3d Cir. 1963), *cert. den.* 376 U.S. 909, 84 S.Ct. 663, 11 L.Ed.2d 608 (1964); *United States v. Matthews,* 244 F.2d 626 (9th Cir. 1957). *Contra, United States v. Chappel Livestock Auction, Inc.,* 523 F.2d 840 (8th Cir. 1975); *United States v. Union Livestock Sales Co.,* 298 F.2d 755 (4th Cir. 1962); *United States v. Kramel,* 234 F.2d 577 (8th Cir. 1956). This does not mean that this court should ignore relevant state law; it simply means that we are not bound by state law as we are in diversity of citizenship cases under *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Indeed, in *Carson* we followed the substantive rule adopted in two other circuits but added:

> We also take note of the fact that this rule is followed in nearly all the states. The formulation of a uniform federal rule does not require that the wisdom of the states be disregarded, and the federal rule may correspond to the rule applied in many states.

372 F.2d at 435.

The Fifth Circuit, which also opts for a uniform federal rule in FmHA cases, employed the following analysis in determining the applicable federal rule:

> Having decided that federal law must apply to the litigation at bar, we nevertheless see no reason nor necessity for fashioning a specialized, esoteric body of federal law, confined in terms to suits by the United States seeking to impose conversion liability on persons who deal with property mortgaged under the FHA loan program. An FHA loan is nothing more nor less than a secured transaction, with the United States as the secured party holding a security interest in property of the debtor in order to insure repayment of the loan . . .. We perceive no reason why the rights of the United States arising out of secured transactions pursuant to the FHA loan program should be any different than those of other financers of farming operations under the Uniform Commercial Code. We have therefore determined that in fashioning the federal law that is applicable to suits arising from the FHA loan program we shall be guided by the principles

---

**3.** Some of these cases rely on state law while others espoused a federal common law rule. *See* text accompanying note 4, *infra.*

**4.** The district court opinion indicates it felt that state law controls in FmHA cases. This was erroneous. Appellee's brief in this court also asserts that state law controls, omitting any mention of our unambiguous decision in *Carson. Cf.* ABA Code of Professional Responsibility. DR 7–106(B)(1).

set forth in Article 9 and other relevant portions of the Uniform Commercial Code.

Such a course meets the principal reason advanced for requiring a federal rule of decision in these cases, that of uniformity, while at the same time assuring that an individual state's modifications of the Code's scheme cannot be employed to defeat federal rights . . . . The Code has now been adopted in every state save Louisiana. By evaluating the issues involved in suits concerning FHA secured transactions in light of Article 9, the federal courts will have a coherent, unified body of law with which to deal and can benefit from the general body of precedent developed by the state courts under the Code. This is not to say, of course, that the interpretation of the Code made by any particular state court will be controlling nor that any modification of the Code enacted by a particular state legislature need be followed. Such interpretations and modifications may be followed only if the federal courts deem them reflective of the weight of authority, consistent with the operation to the FHA program, or desirable as precedent.

On this basis it is our judgment that the Code itself and the general body of precedent developed by the Code states provide the most logical source material supplying the content of federal common law to govern suits arising from FHA secured transactions. In this fashion the federal law governing FHA loans and the state law of secured transactions will coalesce to reinforce each other.

5. Since there is no federal filing system to perfect such security interests, it has been held that the original perfection thereof is governed by state law even in circuits otherwise applying federal law. *Cassidy Commission Co. v. United States*, 387 F.2d 875, 879 (10th Cir. 1967); *United States v. Sommerville*, 324 F.2d 712, 717 (3d Cir. 1963). We agree.

6. Public Law 88–243, D.C.C.E. §§ 28:1–101 to 28:10–104. This is not controlling in this case but is persuasive authority in our search for the federal common law.

*United States v. Hext*, 444 F.2d 804, 809–11 (5th Cir. 1971) (footnotes omitted but commended to the reader) (FHA is the same as FmHA).

*See also Mitchell v. Shepherd Mall State Bank*, 458 F.2d 700, 703 n.1 (10th Cir. 1972) and *United States v. Topeka Livestock Auction, Inc.*, 392 F.Supp. 944 (N.D.Ind.1975).

We agree with the reasoning of the Fifth Circuit that the UCC should be adopted as the relevant federal common law. It would be particularly anomalous not to apply the UCC when the FmHA, whose interests are meant to be protected by a uniform federal rule, does not object to its application. The FmHA perfects its security interests pursuant to the UCC as adopted in the respective states.[5] The agency does not even suggest that we look to other sources of law. Congress has expressed approval of the principles of the UCC in adopting it for the District of Columbia.[6]

Our task in deciding this and like cases is thus simply to apply the rules found in "the Code itself and the general body of precedent developed by the Code states." *Hext*, 444 F.2d at 811. If there is lack of uniformity on a particular issue, either by virtue of non-uniform changes in the UCC or differing interpretations of a uniform provision, we will normally follow the "weight of authority." *Id.* It is essential that federal courts not follow aberrational UCC interpretations since uniformity is the *raison d'etre* of applying federal and not state law. Moreover, once we determine that we should follow the UCC, we are obliged by UCC § 1–102(1) & (2)(c)[7] to promote uniformity.

7. UCC § 1–102:
    (1) This Act shall be liberally construed and applied to promote its underlying purposes and policies.
    (2) Underlying purposes and policies of this Act are
       *   *   *   *   *   *
    (c) to make uniform the law among the various jurisdictions.

Examination of the interpretations of the four month protection found in UCC § 9–103(3) (1962 Official Text) reveals two differing views. One gives the secured party four months of absolute protection in the removal state, and the other gives him four months of conditional protection, the condition being refiling in the removal state within that four months. The absolute protection version is favored by the overwhelming weight of authority in both the cases [8] and commentary [9] and for the reasons stated above we adopt it here. This view gives the secured party four months of protection in the removal state without the necessity of any additional filing there at any time. Thus, so long as the security interest was properly perfected in the original state, it remains perfected vis-a-vis persons dealing with the collateral within four months of removal, such as Burnette-Carter. There is no retroactive lapse of perfection if no filing is made in the removal state within four months—the security interest lapses only at the end of four months.

The minority interpretation of UCC § 9–103(3) reads the section as giving the secured party only conditional protection for four months.[10] The four months is a grace period and protection vis-a-vis persons dealing with the collateral during the four months is conditioned upon filing in the removal state within four months. Absent such perfection in the removal state, the security interest lapses retroactive to the date of removal.

■ The relative merits of these competing interpretations of UCC § 9–103(3) are discussed elsewhere and need not be repeated here.[11] Nor do we need to decide which viewpoint we would prefer if we wrote on a clean slate. Prior cases compel us to adopt a uniform result in FmHA cases, which we read to require application of the UCC. The UCC in turn militates in

**8.** The following cases follow the absolute protection version: *American State Bank v. White*, 217 Kan. 78, 535 P.2d 424 (1975); *City Bank & Trust Co. v. Warthen Service Co.*, 91 Nev. 293, 535 P.2d 162 (1975); *Community Credit Co. v. Gillham*, 191 Neb. 198, 214 N.W.2d 384 (1974); *General Motors Acceptance Corp. v. Long-Lewis Hardware Co.*, 54 Ala.App. 188, 306 So.2d 277 (1974); *Morris v. Seattle-First National Bank*, 10 Wash.App. 129, 516 P.2d 1055 (1973); *First Bristol County National Bank v. Shirley*, 11 U.C.C.Rep. 378 (Tenn.App.1972); *Newton-Waltham Bank & Trust Co. v. Bergen Motors, Inc.*, 68 Misc.2d 228, 327 N.Y.S.2d 77 (1971), *aff'd without opinion* 75 Misc.2d 103, 347 N.Y.S.2d 568 (1972); *Phil Phillips Ford, Inc. v. St. Paul Fire & Marine Ins. Co.*, 454 S.W.2d 465 (Tex.Civ.App.1970), *aff'd on other grounds* 465 S.W.2d 933 (Tex.1971); *Pasack Valley Bank & Trust Co. v. Ritar Ford, Inc.*, 6 Conn.Cir. 489, 276 A.2d 800 (1970); *Utah Farm Production Credit Association v. Dinner*, 302 F.Supp. 897 (D.Colo.1969); *First National Bank v. Stamper*, 93 N.J.Super. 150, 225 A.2d 162 (1966); *Al Maroone Ford, Inc. v. Manheim Auto Auction, Inc.*, 205 Pa.Super. 154, 208 A.2d 290 (1965); *Churchill Motors, Inc. v. A. C. Lohman, Inc.*, 16 A.D.2d 560, 229 N.Y.S.2d 570 (1962).

The following cases have preferred the conditional protection version: *Arrow Ford, Inc. v. Western Landscape Construction Co.*, 23 Ariz. App. 281, 532 P.2d 553 (1975); *United States v. Squires*, 378 F.Supp. 798 (S.D.Iowa 1974).

**9.** The following commentators assert that § 9–103(3) gives four months of absolute protection, although not all agree that that is the better rule: Gilmore, Security Interests In Personal Property, § 22.8, pp. 626–27 (1965); 4 Anderson, Uniform Commercial Code (2d ed.) § 9–103:16; Note, Resolving Conflicts Arising From The Interstate Movement of Motor Vehicles: The Original UCC § 9–103 And Its Successor, 35 Ohio St.L.J. 990, 992 n. 8 & 996 n. 27 (1974); Coogan, The New UCC Article 9, 86 Harv.L.Rev. 477, 535 (1973); Headrick, The New Article Nine of the Uniform Commercial Code: An Introduction and Critique, 34 Mont. L.Rev. 218, 240 (1973); Hawkland, The Proposed Amendments to Article 9 of the UCC—Part 6: Conflict of Laws and Multistate Transactions, 77 Com.L.J. 145, 150–51 (1972); Weintraub, Choice of Law In Secured Personal Property Transactions: The Impact of Article 9 of the Uniform Commercial Code, 68 Mich.L.Rev. 684, 713 (1970).

The following commentators support the conditional protection version of § 9–103(3): White and Summers, Uniform Commercial Code, pp. 848–49 (1972); Vernon, Recorded Chattel Security Interests in the Conflict of Laws, 47 Iowa L.Rev. 346, 377–78 (1962). *See also* UCC § 9–103, Comment 7 (1962 Official Text).

**10.** See notes 8 and 9 *supra*.

**11.** *Id.*

favor of uniformity. These factors clearly point toward our adoption of the majority interpretation of § 9–103(3). Only the existence of some unique federal interest would lead us to deviate from the "weight of authority" under the UCC. No such special interest appears.

We note that the 1972 amendments to the UCC totally rewrite § 9–103. UCC § 9–103(1)(d)(i) [12] (1972 Official Text) clearly adopts the conditional protection version of the four month rule. The conversion complained of here, however, occurred between October, 1970, and December, 1972, before any state had adopted the 1972 Amendments.[13] Not until a majority of jurisdictions accept this change in the law can the amendment be said to represent the prevailing view. If and when that occurs, it would require a different result in a case such as this. Judgment for one in Burnette-Carter's position would then be altogether appropriate since it would continue to serve the ultimate purpose of uniformity in FmHA cases. Presumably the FmHA would then be on notice of the change in the prevailing law and could act accordingly. But until then, the FmHA is entitled to rely on the current prevailing interpretation of the law.[14]

For the reasons stated herein, the judgment of the district court is reversed and the cause is remanded to that court with directions to enter judgment in favor of the United States.

**12.** UCC § 9–103(1) (1972 Official Text):

(a) This subsection applies to documents and instruments and to goods other than those covered by a certificate of title described in subsection (2), mobile goods described in subsection (3), and minerals described in subsection (5).

(b) Except as otherwise provided in this subsection, perfection and the effect of perfection or non-perfection of a security interest in collateral are governed by the law of the jurisdiction where the collateral is when the last event occurs on which is based the assertion that the security interest is perfected or unperfected.

(c) If the parties to a transaction creating a purchase money security interest in goods in one jurisdiction understand at the time that the security interest attaches that the goods will be kept in another jurisdiction, then the law of the other jurisdiction governs the perfection and the effect of perfection or non-perfection of the security interest from the time it attaches until thirty days after the debtor receives possession of the goods and thereafter if the goods are taken to the other jurisdiction before the end of the thirty-day period.

(d) *When collateral is brought into and kept in this state while subject to a security interest perfected under the law of the jurisdiction from which the collateral was re-moved, the security interest remains perfected, but if action is required by Part 3 of this Article to perfect the security interest,*

(i) *if the action is not taken before the expiration of the period of perfection in the other jurisdiction or the end of four months after the collateral is brought into this state, whichever period first expires, the security interest becomes unperfected at the end of that period and is thereafter deemed to have been unperfected as against a person who became a purchaser after removal;*

(ii) if the action is taken before the expiration of the period specified in subparagraph (i), the security interest continues perfected thereafter;

(iii) for the purpose of priority over a buyer of consumer goods (subsection (2) of Section 9–307), the period of the effectiveness of a filing in the jurisdiction from which the collateral is removed is governed by the rules with respect to perfection in subparagraphs (i) and (ii). (Emphasis added).

**13.** 3 Uniform Laws Annotated, Uniform Commercial Code 2–3 (1977 Pamphlet).

At least sixteen states have since adopted the 1972 amendments to UCC Article 9. *Id.*

**14.** Given the apparent pending change in the majority rule, *see* note 13, *supra*, the FmHA would be prudent to operate under the conditional protection rule in the very near future.